(No. 10842.)

THE CITY OF EAST ST. LOUIS, Appellee, *vs.* CARL J. VOGEL *et al.* Appellants.

*Opinion filed December 21, 1916—Rehearing denied Feb. 7, 1917.*

1. PRACTICE—*the appellant will not be prejudiced by failure of judge to sign bill of exceptions within required time.* If a bill of exceptions is presented to the trial judge in time to be filed within the time allowed by the order of the court, the appellant will not be prejudiced by the failure of the judge to sign the bill until after the time fixed for filing has expired, and if it is signed after the expiration of such time it may be filed at once without the entry of an order *nunc pro tunc.*

2. SAME—*signature of the judge to bill of exceptions authorizes the bill to be filed.* Where the signature of the judge is attached to a bill of exceptions which has been presented in time the signature must be regarded as authenticating the bill in the manner required by law and authorizing it to be filed, and the act of the judge in signing amounts to a direction to file the bill.

3. SPECIAL ASSESSMENTS—*engineer's estimate need not contain detailed statement of amount and character of material.* It is not essential that the engineer's estimate of the cost of the proposed improvement contain a detailed statement of the amount and character of material·that will be necessary to construct the improvement.

4. SAME—*engineer's duty is merely to estimate the cost of improvement described.* It is not the duty of the engineer, in making the estimate, to determine the character of the material to be used but merely to estimate the cost of the improvement described in the resolution, and he is required only to itemize the estimate to the satisfaction of the board of local improvements.

5. SAME—*when the estimate is sufficiently itemized.* The engineer's estimate is sufficiently itemized, so far as the property owners are concerned, if it is specific enough to give them a general idea of the estimated cost of the substantial component elements of the improvement.

6. SAME—*details of the work may be left to the board of local improvements.* A substantial compliance with the Local Improvement act is all that is necessary, and the improvement ordinance need not set forth in minute detail every particular of the improvement and every circumstance of the work, as some discretion as to the details must necessarily be left to the board of local improvements.

7. SAME—*whether particular work is a local improvement is a question of fact.*  What is a local improvement is a question of law, but whether the facts in the particular case bring an improvement within the definition so that it may be regarded as a local improvement is a question of fact.

8. SAME—*whether particular improvement is local must be determined by a consideration of the evidence.*  Whether a particular improvement is a local one must be determined by a consideration of the evidence as to the nature of the work, the situation of the improvement and the surrounding conditions, and the Supreme Court cannot determine that question if the evidence is not in the bill of exceptions.

9. SAME—*when city cannot introduce evidence of benefits from other previous improvements in other parts of the city.*  On the hearing as to benefits the city cannot introduce evidence to prove that other parts of the city not affected by the improvement in question had been improved in years past and had been benefited an amount equal to or greater than they had been assessed, where the circumstances under which such previous improvements were made and the character of the improvements are not shown.

10. SAME—*when convenience of travel may be considered.*  While convenience for public travel cannot be the basis of an assessment for benefits for a paving improvement where the only advantage derived is such as is shared with the general public and is not of special benefit to the property assessed, yet if the additional convenience, by reason of the location of the property or otherwise, gives a special increased value to the property which is a benefit over and above that enjoyed by the public generally, then such convenience may be taken into consideration.

11. SAME—*when property additions not adjoining the improved street may be assessed.*  Property additions tributary to but not adjoining the street to be paved, which is the main thoroughfare by which the inhabitants of such property may reach the city, thus giving them a special interest in the street different from that of the general public, are specially benefited by the improvement and may be assessed.

APPEAL from the Circuit Court of St. Clair county; the Hon. M. R. SULLIVAN, Judge, presiding.

D. E. KEEFE, JAMES A. WATTS, J. R. McMURDO, JAMES G. McHALE, and E. J. VERLIE, for appellants.

THOMAS L. FEKETE, JR., City Attorney, (A. H. BAER, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The city of East St. Louis filed its petition in the circuit court of St. Clair county for an assessment of benefits by reason of a certain street improvement and the ascertainment of just compensation to be made for property taken for or damaged by the improvement. An assessment roll was filed, to which various property owners filed objections. From the judgment confirming the assessment roll some of the objectors have appealed.

A motion has been made by the appellee to expunge the bill of exceptions from the record on the ground that it was not signed, sealed and filed within the time fixed by the order of the court for that purpose.

The cause was tried at the January term, 1916, and by various orders of court the time for filing a bill of exceptions was extended until July 12, 1916, when the last extension expired. The bill of exceptions was presented to the trial judge on July 7, was signed by him on July 31 and was filed in the office of the circuit clerk on the same day. At each extension of time the appellee excepted to the allowance of the extension and objected to the signing of the bill of exceptions. There is nothing in the record to indicate that the extensions of time were not properly granted, but it is insisted that the bill of exceptions not having been signed and sealed by the judge and filed by the clerk within the time allowed by the order of court should be stricken from the record. It has been frequently held that if a bill of exceptions is presented to the trial judge at such time that it could be filed within the time provided by the order of the court, the party will not be prejudiced by the neglect or delay of the judge to sign the bill until after the time fixed for that purpose. (*Underwood* v. *Hossack,* 40 Ill. 98; *Magill* v. *Brown,* 98 id. 235; *Hawes*

v. *People,* 129 id. 123; *Hall* v. *Royal Neighbors,* 231 id. 185; *Hill Co.* v. *United States Guaranty Co.* 250 id. 242; *People* v. *Rosenwald,* 266 id. 548; *Illinois Improvement and Ballast Co.* v. *Heinsen,* 271 id. 23.)  The bill of exceptions was presented to the trial judge, in strict conformity with the order of the court, five days before the expiration of the extension of time.  It was retained by the judge without his signature until July 31, when he signed it, and it was immediately filed in the office of the clerk.  It could not have been filed sooner, and the appellants could do no more than they had done when they presented the bill of exceptions to the judge within the time fixed by the order of the court.

It seems to be thought that the bill being signed after the expiration of the extension of time, an order to file the same *nunc pro tunc* was necessary.  No such order was required.  If the party presenting the bill had complied with the order of the court he had done all that was necessary to entitle him to file the bill.  The delay caused by the failure of the judge to sign the bill at once could not prejudice the party.  When the signature of the judge was attached to the bill it must be regarded as authenticating it in the manner required by law and authorizing it to be filed.  The act of the judge in signing amounted to a direction to file the bill of exceptions, and the bill was properly filed and became a part of the record.  In the case of *Hall* v. *Royal Neighbors, supra,* the bill of exceptions was stricken from the record.  It was signed by the judge seven days before the expiration of the time allowed for that purpose but was not filed until twenty-one days later,—two weeks after the expiration of the time,—and the failure to file it was not due to any neglect or delay of the judge but was the neglect of the party.  In *Hill Co.* v. *United States Guaranty Co. supra,* on June 15, 1908, the time for filing the bill of exceptions was extended sixty days from June 27.  The bill was presented to the judge for signature on June 25, was

signed on September 28, and filed in the clerk's office on the same day as of that date and not as of June 25. The case is precisely similar to this case, and a motion to strike the bill of exceptions in that case was denied. In *People v. Rosenwald, supra,* the time for filing the bill of exceptions expired on October 11, 1914. It was presented on October 10, 1914, to a judge of the municipal court who did not try the case. Afterward the judge who tried the case signed the bill of exceptions under the date "this 21st day of October, A. D. 1914, *nunc pro tunc* as of October 10, 1914." There was no authority for presenting the bill of exceptions for settlement to a judge who did not try the case, and there was no presentation to any judge who was authorized to settle the bill of exceptions within the time fixed for that purpose, and the motion to strike the bill of exceptions in that case was allowed. In *Illinois Improvement and Ballast Co.* v. *Heinsen, supra,* the case was tried by Judge Pomeroy and the time for filing the bill of exceptions was extended to August 15, 1913. The bill of exceptions was presented to Judge Pomeroy on June 23. On September 27, after the expiration of the extension of time, the bill of exceptions was signed without any further order being entered, and it was not filed until October 14, seventeen days later. The next day an order was entered by the chief justice of the circuit court of Cook county ordering the bill of exceptions to be filed *nunc pro tunc* as of June 23, 1913. On motion of the appellee this bill of exceptions was stricken from the record because not filed within the time allowed by law. It was held that Judge Pomeroy, when he signed the bill of exceptions, could have entered an order allowing it to be filed *nunc pro tunc* as of June 23, 1913, or it could have been filed by the clerk as of the date it was signed by Judge Pomeroy,—citing *Hill Co.* v. *United States Guaranty Co. supra.* In no case has a bill of exceptions which was presented to the trial judge within the time allowed for that purpose and was signed by

him after the expiration of the time and immediately filed with the clerk been stricken from the record because there was no order to file it *nunc pro tunc*. Such a ruling would be extremely technical and unjust. The facts by reason of which the party is entitled to have his bill of exceptions regarded as a part of the record clearly appear. It has been the practice of trial courts and of this court to permit the bill of exceptions to be filed as a part of the record, and no reason is shown why this is not a proper practice. The motion to expunge the bill of exceptions will be denied.

A motion was, however, allowed at the October term expunging that part of the bill of exceptions referring to the proceedings prior to the January term, 1916, because no bill of exceptions to the rulings of the court made in such proceedings was taken at the term at which such rulings were made or within any extension of such time, but such exceptions appear only in a bill of exceptions taken at a subsequent term, when the trial of the question of benefits occurred. (*Village of Franklin Park* v. *Franklin,* 228 Ill. 591.) All legal objections which depend upon the evidence for their determination are therefore excluded from our consideration. Some objections, however, are argued which are claimed to arise upon the record without any bill of exceptions.

The ordinance provides that State street, between certain limits, shall be improved by paving and otherwise. It provides that in a portion of the street a concrete marginal curb shall be set parallel to and ten feet distant on each side of the center line of the street, and that the space between such curbs shall not be paved or otherwise included within the improvement but shall be improved and the improvement paid for in accordance with the provisions of ordinance No. 1796, entitled "An ordinance providing for the removal of the tracks of the East St. Louis and Suburban Railway Company from the sides of State street and replacing said tracks in the center of said street, and also

providing for the manner and style of improvement of State street from the easterly end of the present paved portion of said State street to the easterly limits of the city of East St. Louis, and what portion thereof shall be improved by or paid for by the East St. Louis and Suburban Railway Company," etc. It is insisted that the provision that this portion of the street shall be improved and the improvement paid for in accordance with the terms and provisions of ordinance No. 1796 made the improvement of that portion of the street a part of the scheme of improvement involved in this proceeding, and that it was essential that ordinance No. 1796 should be set out in the petition to show the nature, extent and character of the improvement. This claim is not well founded. The presumption to be drawn from the language of the ordinance and the title of ordinance No. 1796 is, that the improvement of that portion of the street was provided for by the latter ordinance and that such improvement was not a part of the scheme of improvement covered by the present ordinance. The only object of referring to it in the ordinance is to describe the improvement intended and to exclude from it the part of the street provided for by ordinance No. 1796.

The ordinance provides for curbing set on edge and resting on concrete six inches deep by twelve inches wide, and backed with like concrete six inches wide and eight inches deep. The objection is made that the estimate did not include the cost of this concrete footing and backing. The estimate contained an item for 38,170 lineal feet of sandstone curb, six inches by eighteen inches, set in concrete, complete in place, $32,444.50. The estimate stated that it included labor and material, and this item was sufficient to include the concrete foundation and backing. It has been frequently held that it is not essential that the estimate should contain a detailed statement of the amount and character of material that will be necessary to complete the improvement. It is not the duty of the engineer in making

the estimate to determine the character of the material to be used but merely to estimate the cost of the improvement described, and he is only required to itemize the estimate to the satisfaction of the board of local improvements. The estimate is sufficiently itemized, so far as the property owners are concerned, if it is specific enough to give them a general idea of the estimated cost of the substantial component elements of the improvement. *City of Chicago* v. *Underwood,* 258 Ill. 116; *Hulbert* v. *City of Chicago,* 213 id. 452; *Connecticut Mutual Life Ins. Co.* v. *City of Chicago,* 217 id. 352.

The ordinance requires the contractor to provide necessary filling that may be required in excess of that obtained from portions of the street that are excavated, which shall be pure, clean loam or earth, free from rubbish, cinders, etc., and form a solid foundation, and to haul to such points within 2000 feet as the board of local improvements may direct and level off all surplus excavated material, while there is no estimate of the cost of such loam or earth that may be required for filling, or of the hauling. It is also contended that this provision improperly delegates power to the board of local improvements. The estimate contained an item of "brick paving with Portland cement grout filler on six inches Portland cement concrete foundation and one and one-half inches of sand, complete in place." It also contained items of "excavation placed in fill and preparation of sub-grade," and "excavation removed and preparation of sub-grade." The estimate stated that it included all labor and material, and these items of brick paving, complete in place, including labor and material, and of excavating, filling and preparation of sub-grade, necessarily included the loam and earth required for the filling and the hauling necessary to dispose of the surplus excavated material. It is not necessary, even if it were possible, for the ordinance to set forth in minute detail every particular of the improvement and every circumstance of the work. A

276 – 32

substantial compliance with the statute is all that is necessary, and some discretion as to the details of the work must necessarily be left to the board of local improvements. *City of Chicago v. LeMoyne,* 243 Ill. 379; *City of Watseka v. Orebaugh,* 266 id. 579.

What has been said applies also to the objection that the ordinance requires all soft and spongy places which develop in rolling to be dug out and replaced with crushed stone and re-rolled until firmly compacted, and directs that the cost of necessary stone shall be allowed to the contractor, and that all junctions with other pavements shall be neatly made, and that portions of said pavement may be ordered re-laid by the contractor at actual cost as determined by the engineer, while there is no estimate of the cost of this work.

The cost of the concrete foundation under the paved roadway is included in the estimate of the engineer for 92,810 square yards of brick paving, and the vitrified service pipe is estimated as follows: "1732 lineal feet ten-inch vitrified clay pipe connections from catch-basins, complete in place, $952."

It is insisted that the ordinance is void because it provides for the re-construction and widening of a bridge over the drainage canal, which, it is argued, in its very nature is a public improvement and should be paid for out of general taxes. What is a local improvement is a question of law, but whether the facts in the particular case bring an improvement within the definition so that it may be regarded as a local improvement is a question of fact. (*City of Waukegan v. DeWolf,* 258 Ill. 374.) That question is for the determination of the municipal authorities in the first instance. It can be determined only upon consideration of the nature of the work, the situation of the improvement and the surrounding conditions, and its decision depends on a consideration of the evidence. Since there is no bill of

exceptions containing this evidence before us we cannot consider that question.

Objection is made to the certificate of the ordinance attached to the petition because it purports to be signed in the name of the city clerk by a deputy, while the city clerk of the city of East St. Louis has no deputy. This is a fact that can only be shown by evidence, and in the absence of a bill of exceptions the objection cannot be considered.

The same answer may be made to the objection that one of the commissioners to make the assessment was an employee of the city, and to the objection that another of the commissioners never took the oath required by the statute.

In the trial of the question of benefits many witnesses were introduced on either side and there was much difference of opinion as to the effect of the improvement upon the value of property involved. State street is the main thoroughfare between East St. Louis and Belleville. The improvement extends to the boundary line between the two municipalities, which are adjoining. Much of the property along the line of the improvement is farm property, some of which is vacant. Some of it is very low and is several feet below the level of the street. The testimony of the witnesses for the petitioner was that all the land on either side of the street, whether high or low, dry, under water or out of water, or subject to overflow so that it could not be cultivated, would be benefited five dollars a front foot, without any distinction. The petitioner introduced a witness and asked the following question: "You speak of water inundating some of the land in this territory; state if that is a condition common to East St. Louis and practically all of its area." An objection was overruled and the witness answered, "It is." He was then asked to state in a general way whether or not the land within the territory assessed in this case, so far as being subject to inundation, is any different from land generally in the territory of the improvement and in the city of East St. Louis. Over

objection he was permitted to answer, "Not different at all. It is really better than it is in East St. Louis. When I say East St. Louis I mean the down-town district." He was then asked: "State whether or not, in a state of nature, the down-town district of East St. Louis, or the parts of East St. Louis other than this territory, had any sloughs and slashes substantially the same in character as those in the territory local to the proposed improvement." Objection being made and objection overruled, the witness answered: "In this district the slashes have no comparison to what they were in East St. Louis proper." After having been cross-examined, the witness on re-direct examination was asked this question: "You were just asked whether or not you would say if the property abutting on State street is four or five or six feet lower than the street and so situated that you cannot raise a crop on it for a number of years, would you still say it is benefited five dollars a foot, and you answered yes. State whether or not you base that on any experience or your observation in the practice of real estate in East St. Louis." Objection was overruled and the witness answered: "I base that on the knowledge of past experience in East St. Louis where streets have been raised from one to thirteen feet and the same assessment was spread over that district and everybody was satisfied to pay the assessment, and it has been a benefit equal and more than the amount of the assessment where it has been ten feet below the street. The construction of improvements above the natural level of the contiguous land is the common practice all over East St. Louis." He was then asked, on cross-examination, if it was not true that the improvement on Division avenue cost about $16 a foot and if that property cannot be bought to-day for $15. An objection to this question was sustained, and the objectors offered to prove by the witness that property in the built-up portions of East St. Louis near the down-town district, at Eighth street and Division avenue, where improvements were made at a cost

of about $16 a lineal foot, can to-day be bought for $15 a foot, but the court refused to admit the evidence. This whole examination was improper. The petitioner had no right to introduce evidence as to the condition, in a state of nature, of parts of the city not affected by this improvement for the purpose of affording a comparison between those lands and the lands involved in the present proceeding, and to show that in those parts of the city, under similar circumstances, improvements had been made and that everybody had been satisfied with the assessment and the property had been benefited to an extent equal to or greater than the amount of the assessment. The jury were thus invited to make a comparison between an improvement and an assessment now proposed to be made and another improvement and assessment made at some indefinite time in the past, of a character not shown and under circumstances then existing but not shown, and to compare the increase in value arising since the previous assessment with the anticipated increase in value to the property involved in this proceeding. Moreover, if such an examination had been proper then certainly the appellants ought to have been permitted to show that the property involved in the earlier assessment was now worth less than the assessment amounted to. Examination of a similar character was permitted in the case of other witnesses and was erroneous.

George Distler, a witness for the appellee, having testified that the average increase in values by reason of the improvement would be seven dollars a foot, on cross-examination stated that he did not think it would be long until all that property would increase more than the cost of the improvement; that if East St. Louis grows the way it has, it will not take fifteen years. The appellants moved to exclude the evidence of this witness as to benefits because he included the improper element of future growth of the city. The court denied the motion. It is manifest, however, from the examination of this witness that his opinion as to the

immediate increase in the value of the property was based not upon the future growth of the city but the present construction of the improvement.

The court refused to give to the jury instructions 17 and 18, which were as follows:

17. "The court instructs the jury that while you may believe, from the evidence, that the roadway such as is contemplated to be made and provided for by the ordinance in question might offer a convenience for public travel and remove present obstacles to public travel for the general public, those are matters that should not be considered by you in determining whether or not the property of the several objectors will be presently specially benefited."

18. "The court instructs the jury that the evidence of all witnesses relating to special benefits to the property of the objectors, whose opinions as to special benefits are based in whole or in part on the element of increased travel along State street and the increased future growth of that part of the city, is excluded from the consideration of the jury, and you are instructed to not consider such evidence."

They were properly refused. While convenience for public travel and the removal of obstacles to such travel cannot be the basis of an assessment for benefits where the only advantage derived from them is such as is shared with the general public and is not of special benefit to the property in question, yet if the additional convenience, by reason of the location of the property or otherwise, gives a special increased value to the property which is a benefit over and above that enjoyed by the public generally, then such convenience may be taken into consideration in assessing benefits.

Harding and Beckwith, two of the appellants, each asked for a peremptory instruction to the jury to find that their respective properties were not specially benefited by the proposed improvement. The ground on which these instructions were asked was that State Street Park Annex No. 2,

(the subdivision in which Harding's property was situated,) and Security Park addition, (the subdivision in which Beckwith's property was situated,) did not adjoin State street and were not accessible to it except over dirt roads from those additions extending several blocks to State street. These additions were tributary to State street, which was the main thoroughfare by which their inhabitants could reach East St. Louis. The property owners there had a special interest in State street different from that of the general public inasmuch as it was their means of access to the property, and since the improvement tended to make the means of access better and more convenient it tended to add specially to the value of their property. The case is not similar to that of the case of *City of Kankakee* v. *Illinois Central Railroad Co.* 263 Ill. 589. There the strip of land which was found not subject to assessment was not only not contiguous to the street improved, but the street improved was of no advantage to the property other than the general advantage of improved streets to all the public. In that case the property which was held not to be benefited was on the west side of a railroad which was in a cut, while the street improved was on the east side of the railroad, and the occupants of the property on the west side of the railroad could have no special occasion to use the street on the east side and had no direct access to it.

The appellants asked the court to give an instruction to the jury as to the form of their verdict, as follows:

"The court instructs the jury that if you find, from the evidence, that the respective amounts which are assessed against the respective objectors, or any of them, as follows, [naming the objectors and the amount, respectively, assessed against each of them,] is more than the assessed property would be specially benefited by the proposed improvement, then you are instructed you should find by your verdict the amount, if any, you believe it will be specially benefited by the said proposed improvement, and in such

case the form of your verdict may be, to-wit: 'We, the jury, find that the premises of the following named objectors is assessed 'for more than each will be specially benefited, and we further find that each should be assessed for the amount set opposite each respective name, viz.: Names, amount it should be assessed.' "

It was not error to refuse this instruction. There are no assessments against individuals, and the verdict should not be for certain amounts set opposite the names of owners but for certain amounts against the respective tracts. The jury were properly instructed as to the form of their verdict by other instructions.

The appellants asked an instruction in regard to the view of the premises which the jury had during the trial, the last sentence of which was as follows: "The purpose of permitting you to inspect the territory subject to assessment was primarily that you might have some knowledge of the character of the land assessed and then to hear the further testimony of witnesses as to how much, if at all, it will be specially benefited immediately upon the completion of said improvement." The court modified the instruction by striking out the words, "immediately upon the completion of the improvement." The object of the instruction was to advise the jury as to the purpose of the view and the effect which they should give it. The jury had already been informed in previous instructions as to the time with reference to which the benefits should be assessed, and it was therefore not error for the court to eliminate this clause from the instruction.

The judgment of the circuit court of St. Clair county will be reversed and the cause remanded.

*Reversed and remanded.*