(No. 11933.—Judgment affirmed.)

THE VILLAGE OF LADD, Defendant in Error, *vs.* THE CHICAGO, OTTAWA AND PEORIA RAILWAY COMPANY *et al.* Plaintiffs in Error.

*Opinion filed April 17, 1918.*

1. SPECIAL ASSESSMENTS—*only component elements of improvement need be itemized in estimate.* The statute requires only that the estimate be itemized to the satisfaction of the board of local improvements, and it is sufficient, so far as the property owners are concerned, if the estimate is so specific as to give a general idea of the cost of each of the substantial, component elements of the improvement. (*Lyman* v. *Town of Cicero,* 222 Ill. 379, distinguished.)

2. SAME—*when plan of improvement should be considered as incorporated in ordinance.* Where the plan of the improvement is attached to and made a part of the ordinance it should be considered as if incorporated in full in the ordinance.

3. SAME—*the estimate should be read with the ordinance.* The estimate of the cost of a proposed improvement should be read with the ordinance in order to remove any uncertainty as to the description of the improvement and to ascertain the proper description thereof.

4. SAME—*some details of work must be left to public authorities.* An ordinance for a street improvement providing that the sound curb shall be re-set cannot be objected to because it does not specify particularly what curb is to be re-set and what is to be put in new, as the determination as to what curb is sound must be left to the discretion of the public authorities, subject to whose approval the work is to be done.

5. SAME—*statute as to division of assessment into installments refers to the entire assessment.* Section 42 of the Local Improvement act, providing the manner in which the assessment shall be divided into installments, has reference to the entire assessment and not to the individual assessments against the various tracts.

WRIT OF ERROR to the County Court of Bureau county; the Hon. J. R. PRICHARD, Judge, presiding.

CAIRO A. TRIMBLE, and PERRY D. TRIMBLE, for plaintiffs in error.

C. N. HOLLERICH, Village Attorney, for defendant in error.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

In July, 1917, the village of Ladd, in Bureau county, following the provisions of the Local Improvement act, filed its petition in the county court of that county praying that the cost of improving a certain portion of Main street, in said village, might be levied, assessed and collected by special taxation of property abutting the improvement, according to frontage. To this petition plaintiffs in error filed numerous objections. These objections, after a hearing in the county court, were overruled, and objections as to the merits having been waived, a judgment was entered in said court confirming the assessment. From that judgment this writ of error has been prosecuted.

The ordinance was for paving a certain portion of said street with vitrified brick on a concrete base. It is insisted

by plaintiffs in error that the ordinance, estimate and resolution of the board of local improvements are defective as to the construction of certain parts of said improvement, and that the ordinance is invalid in not following the specific provisions of the statute as to the division of the assessment into installments.

Counsel for plaintiffs in error contend that the estimate of cost submitted by the board of local improvements is insufficient in that it does not include as separate items of cost all the component parts of the improvement; that it does not separately estimate the cost of excavation necessary for the catch-basins; that while the specifications of the contract provide that the bid for catch-basins shall include necessary excavations, the item as to the cost of excavation is entirely lacking in the estimate. The estimate as to catch-basins provides: "Twelve catch-basins complete, including one length of ten-inch vitrified tile sewer-pipe set in place, at $22 each, $264." The specifications with reference to catch-basins provide: "They shall consist of a brick pit with cast-iron cover." Incorporated as a part of the estimate, before the separate items are set out, it is stated that the estimate includes "all labor and material and all other lawful expenses of said improvement." The only requirement of the statute as to the estimate is that it shall be itemized to the satisfaction of the board of local improvements, and this court has held that the estimate is sufficiently itemized, so far as the property owners are concerned, if it is sufficiently specific to give them a general idea of the estimated cost of the substantial, component elements of the improvement; that it is not necessary for the estimate to set out in minute detail all the items of labor and material which go into the improvement; that only the substantial, component elements are required in separate items. *Hulbert* v. *City of Chicago,* 213 Ill. 452; *Connecticut Mutual Life Ins. Co.* v. *City of Chicago,* 217 id. 352; *City of Chicago* v. *Gage,* 237 id. 328; *Village of Oak Park*

v. *Galt,* 231 id. 482; *City of Chicago* v. *Underwood,* 258 id. 116.

In *Chicago and Western Indiana Railroad Co.* v. *City of Chicago,* 230 Ill. 9, it was contended that the estimated cost of the improvement was insufficient because it did not include the cost of grading. This court, after laying down the rule as to the requirements of the statute as to estimates, said (p. 11) : "The estimate divides the improvement into four substantial, component elements : the concrete gutter on cinders, the combined curb and gutter on cinders, the paving with its various parts, and the adjustment of sewers, etc. We do not think the grading constitutes a substantially different component part of the improvement which must be separately itemized. Grading or excavation is a part of each of the four items of the estimate. No part of the material therein specified can be applied to this improvement without the labor of putting it in place. The estimate is preceded by the statement that it includes 'labor, material and all other expenses.' It must therefore have been based upon the various items of material in place in the completed work and must have included the necessary grading. * * * We regard the estimate as sufficient."

In *City of East St. Louis* v. *Vogel,* 276 Ill. 490, it was argued that the estimate did not include the cost of the concrete footing of the curb, such footing being required by the specifications to be six inches deep by twelve inches wide. The opinion, in discussing this question, said (p. 496) : "The estimate contained an item for 38,170 lineal feet of sandstone curb, six inches by eighteen inches, set in concrete, complete in place, $32,444.50. The estimate stated that it included labor and material, and this item was sufficient to include the concrete foundation and backing."

In *City of Chicago* v. *Singer,* 202 Ill. 75, it was contended that the estimate was insufficient because it did not include the cost of the earth filling required to be placed

back of the curb-stones as described in the ordinance, and
that the estimate for such back-filling should have been sep-
arate from the other estimate. The opinion said (p. 82) :
"The engineer's estimate does not itemize the cost of fill-
ing a space at the back of the curb-stones with earth filling.
It appears from such estimate the improvement will require
27,808 lineal. feet of curb-stones, the cost of which is esti-
mated at sixty cents per lineal foot. The estimate submit-
ted by the engineer includes, as is expressly stated in the
estimate, 'labor, material and all other expenses attending
the same.' It is therefore fairly to be considered that the
estimate of sixty cents per lineal foot for the curb-stones
included not only the stones themselves, but the 'labor, ma-
terial and all other expenses' attendant upon placing the
stone in place and filling back, as required by the ordinance."

Counsel for plaintiffs in error rely as to this point es-
pecially upon the reasoning of this court in *Lyman* v. *Town
of Cicero,* 222 Ill. 379, where the estimate was held not
sufficiently itemized. In that case a cinder foundation for
the curb was not referred to in the estimate although pro-
vided for in the ordinance. The opinion said (p. 383) :
"The extent to which separate items are to be set down evi-
dently depends upon the nature of the improvement, which
may all be fairly included in one item or may consist of
several,"—and this statement was approved as to estimat-
ing separate items,· in *MacChesney* v. *City of Chicago,* 227
Ill. 215. We think the *Lyman case* is clearly distinguish-
able from the case at bar. Here there was no separate
part of the material going into the work that was left out.
The only part that was left out, as argued by counsel, was
the work of excavating for the pit, and that was included
plainly under the general statement that the estimate in-
cluded all work and material necessary for the improvement.
The catch-basins are substantial, component elements of the
improvement, but the excavations for the catch-basins are
merely a part of the elements necessary for the construction

of said basins and not in themselves substantial, component elements of the improvement, as the term "component elements" has been defined in the various decisions of this court. We think every contractor or person familiar with the work would clearly understand from this estimate that the excavation for the catch-basins was a necessary part of the cost of the catch-basins.

Counsel for plaintiffs in error further argue that the ordinance creating this improvement is uncertain, indefinite and insufficient in not specifying the exact amount of curbing to be constructed; that the specifications provide that a certain part of Main street shall be paved and curbed on each side and around the corners of street intersections, and further provide that sound curb conforming to the specifications, now in place along said street, shall be brought to proper line and grade, but that there is nothing in the specifications or ordinance to show how much sound curb there is or how much curb is to be constructed by the contractor. A plan and profile of the improvement was attached to and made a part of the ordinance and should therefore be considered the same as if incorporated in full in the ordinance. (*City of Highwood* v. *Chicago and Milwaukee Electric Railroad Co.* 268 Ill. 482; *City of Watseka* v. *Orebaugh,* 266 id. 579; *City of Hillsboro* v. *Grassel,* 249 id. 190.) The estimate of the cost of a proposed improvement should be read with the ordinance, in order to remove any uncertainty as to the description of the improvement and to ascertain the proper description thereof. (*City of Chicago* v. *Edens,* 261 Ill. 272; *City of Hillsboro* v. *Grassel, supra.*) The second item of the estimate provides for "3100 lineal feet of concrete curb six inches by twenty inches," etc., giving the cost of the same. A later item of the estimate provides for "re-lining curb now in place." An examination of the plan and profile attached to the ordinance shows that the total length of the improvement for paving is 2129 feet, and also shows the curb line on both sides of

said street for the entire length. The total length of the curb on both sides, therefore, is substantially 4258 feet. To be absolutely correct, deduction must be made for the railway tracks crossing the improvement and for intersecting streets, and an addition should be made for the curb extending around the corners of intersecting streets to the property line. The estimate of the engineer provides for the construction of 3100 feet of concrete curb. Deducting this from the total length of the curb on both sides of the street,—that is, 4258 feet,—leaves a balance of 1158 feet, which represents substantially the amount of sound curb now in place, as the deductions for cross-streets and railway are about equal to the additions for curbing around the corners.

It is conceded by counsel for defendant in error that the amount of sound curb is not expressly stated in the estimate or ordinance, but it is argued in favor of the figures just given that such amount can be definitely ascertained and determined, as a necessary consequence, from the provisions in the estimate and the showing in the plat and profile as to the length of the improvement. Substantially between 1100 and 1200 feet is estimated as being sound curb that will not have to be replaced but simply re-lined so as to conform to the requirements of the ordinance. It is clear, therefore, that the estimate must be for new curb 3100 feet. In *Howe* v. *City of Chicago,* 224 Ill. 95, it was contended, as here, that there was a variance between the first resolution of the board of local improvements and the ordinance as to the extent and character of the improvement as to the curb. The opinion says (p. 98) : "In the resolution the improvement is described in substantially the same language that is used in the ordinance. The ordinance excepts those portions where curbs now exist and all intersections with other streets. No one reading the resolution would understand that gutters were to be placed across intersecting streets. The estimate of the engineer

accompanying the resolution shows, at least by fair impli-
cation, that there is 1304 lineal feet of the distance along
the proposed improvement where a curb is already in but
no gutter.  The granite concrete gutter is to be placed where
the curb is already in, and where there is neither curb nor
gutter 709 lineal feet of the granite concrete combined curb
and gutter is to be put in.  This, it seems to us, is the
clear meaning of the resolution when read in the light of
the other proceedings,—and the ordinance means the same
in substance."  (See, also, *Mead* v. *City of Chicago,* 186
Ill. 54; *Rollo* v. *City of Chicago,* 187 id. 417.)  In this case
the estimate of the engineer shows clearly and definitely,—
not by implication, as in the case just quoted from,—that
there is to be constructed 3100 feet of new curb, and the
plat attached to and made a part of the ordinance shows the
length of the curb on both sides of the improvement to
be 4258 feet.

It is further insisted in this connection by counsel for
plaintiffs in error that the ordinance is faulty because it does
not specify particularly what curb is to be re-set and what
is to be put in new; that the decision as to what curb is
sound and what must be built is left to the judgment and
control of the engineer in charge of the work.  In *City of
Chicago* v. *LeMoyne,* 243 Ill. 379, the ordinance stated the
number of feet of curb and that one-half of it was to be
constructed by re-setting the old curb and the other half
by using new curb-stones, and it was argued in that case
that the ordinance was invalid because it left to the board
of local improvements to decide which of the curb-stones
were to be re-set and which were to be replaced by new
ones.  On this point the opinion of the court said (p. 380):
"The ordinance names the street to be improved, prescribes
the place where the curb lines are to be located, their height
and width, the place where they are to start and where
they are to end, the amount of new curbing to be put in
and the amount of old curbing to be re-set, and that the

work 'shall be done in a workmanlike manner, under the superintendence of the board of local improvements.' The only thing about the construction of the curbing which is left uncertain is, it is not specifically stated in the ordinance where the new curb-stones are to be placed or the quality and character of the old curb-stones to be used and the places where they are to be re-set. It is not necessary that an improvement ordinance set forth every detail of the improvement and point out all the particulars of the work. A substantial compliance with the statute is all that is necessary, * * * and some discretion as to the details of the work must necessarily be left to the board of local improvements. * * * We are of the opinion, in the construction of an improvement like the one under consideration, the discretion vested in the board of local improvements to determine which of the old curb-stones now along the line of the improvement are fit to be re-set and the places in the curb line where the old stones shall be re-set and where new ones shall be set does not render the ordinance void." The reasoning in that case we deem conclusive on the question here raised, and counsel for plaintiffs in error concede it would be if the amount of curb-stones to be re-set were shown by the ordinance. What we have already said as to the amount of curbing, answers, in our judgment, this objection. This question as to the discretion to be left to the engineer seems peculiarly within the reasoning that some details of construction must be left to the authorities in charge of the work. It is doubtless true, as argued by counsel for plaintiffs in error, that it cannot be told positively what particular curb-stones are sufficiently sound to be re-set until the work is being done; that the only way to learn is by digging down and finding the condition of the curb-stones, and this could not be done without great expense before the pavement was actually being laid. To hold that the authorities in charge could not be permitted to exercise their discretion at the time the work was being put in,

and thus save the extra expense of digging down by all the curb-stones before the work was let, on the ground that to leave such discretion to the authorities would be an unauthorized delegation of power, would be most detrimental to public interest. As this court has said with reference to delegating legislative power: "Necessarily, regarding many things, especially affecting local or individual interests, the legislature may act either mediately or immediately. We see, then, that while the legislature may not divest itself of its proper functions or delegate its general legislative authority, it may still authorize others to do those things which it might properly yet cannot understandingly or advantageously do itself. Without this power legislation would become oppressive and yet imbecile." (*People* v. *Reynolds,* 5 Gilm. 1. See, also, where the same doctrine has been laid down, *Schweiker* v. *Husser,* 146 Ill. 399; *Arms* v. *Ayer,* 192 id. 601; *Block* v. *City of Chicago,* 239 id. 251.) Practically all ordinances for local improvements contain a provision that the work shall be carried on subject to the approval of the public authorities. In order to obtain good work and practical results such provision is absolutely necessary. It would be out of the question to so specify in the ordinance all the details for completing any work in such manner as to make it unnecessary to have the work done subject to the approval of public authorities. Some discretion, as said before, must necessarily be left to these authorities. *City of Watseka* v. *Orebaugh, supra.*

If we understand the objection of counsel for plaintiffs in error that the ordinance does not provide for adequate drainage, it is to the effect that there is no provision for the connection of the man-holes and catch-basins with the sewer. We think the reasoning in *City of Hillsboro* v. *Grassel, supra,* on facts similar to the facts here, shows that the trial court rightly overruled this objection.

We have not attempted to discuss in detail all of the decisions cited and relied on by counsel in this case. What

we have said, we think, covers fairly the general principles involved in the decisions on the points raised.  None of the cases to which we have referred are identical on facts with this case and therefore would not necessarily be controlling.

Counsel for plaintiffs in error argue that the assessment roll, in dividing the assessment into installments, does not conform to the provisions of section 42 of the Local Improvement act.  That section, after providing that certain assessments shall be divided into installments, not more than ten in number, and that certain other assessments shall be divided into not more than twenty installments, continues: "In all cases such division shall be made so that all installments shall be equal in amount, except that all fractional amounts shall be added to the first installment, so as to leave the remaining installments of the aggregate equal in amount and each a multiple of one hundred dollars ($100)," etc.  (Hurd's Stat. 1917, p. 499.)  Counsel on both sides argue this matter as if the statute required the assessment of each individual property owner to be divided into installments that were multiples of $100.  This court has held that this statute "does not contemplate the division of each individual installment into multiples of $100, but that the 'remaining installments of the aggregate' amount shall be each a multiple of $100." (*Gage* v. *City of Chicago,* 195 Ill. 490.)  We find nothing in the abstract presented in this proceeding which shows the aggregate of the installments of the assessment roll.  The abstract only shows what the individual assessments were of the two objectors, and not the aggregate of the installments for the entire assessment.  The courts are not authorized, under the statute, to require each individual assessment to be divided into installments that are multiples of $100.  On this record, therefore, the trial court rightly overruled this objection.

We find no reversible error in the record.  The judgment of the county court will be affirmed.

*Judgment affirmed.*