THE VILLAGE OF DOWNERS GROVE, Appellee, *vs.* GEORGE W. BAILEY *et al.* Appellants.

*Opinion filed April 20, 1927.*

1. SPECIAL ASSESSMENTS—*what determines whether improvement is local or general.* Whether an improvement is local or general depends upon the nature of the work, the situation of the improvement, the surrounding conditions, and whether the substantial benefits to be derived therefrom are local or general in their nature, and if the purpose and effect are to improve a locality it is a local improvement although there is incidental benefit to the public, but if the primary purpose and effect are to benefit the public it is not a local improvement although it may incidentally benefit property in a particular locality.

2. SAME—*when question whether an improvement is local is a question of law and when of fact.* Whether an improvement is local or general is a question of law but whether the facts in a particular case bring an improvement within the definition of a local or general improvement is a question of fact, to be determined from all the facts and circumstances established by evidence.

3. SAME—*an improvement may be local although it benefits the public.* The fact that an improvement will be of advantage to the city does not change its character as a local improvement if it is primarily of material advantage to the adjacent property and enhances its value as distinguished from the benefits diffused by it throughout the municipality.

4. SAME—*when water main is a local improvement.* Although the laying of a larger water main is made necessary because the city has abandoned old wells and established new wells in another location to which the proposed main is to be built the improvement must be regarded as local, where some of the adjacent property had no water service and other property will be given better protection against fire, and where, since the change in the water system, new mains were laid in other parts of the city which were paid for by special assessment and not by general taxation.

APPEAL from the County Court of DuPage county; the Hon. S. L. RATHJE, Judge, presiding.

CHARLES W. HADLEY, (HARRY G. WEAVER, of counsel,) for appellants.

BUNGE, GROTEFELD & BUNGE, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

The village of Downers Grove filed its petition in the county court of DuPage county on the 9th day of August, 1926, for the confirmation of a special assessment under an ordinance adopted by the council of the village of Downers Grove for the construction of certain cast-iron main pipes and laying the same from the village reservoir in certain streets of the village, the cost of which, the ordinance provided, was to be paid by special assessment. Appellants filed objections to the confirmation of the assessment. The county court ordered the assessment roll re-cast, and upon this being done overruled appellants' objections and confirmed the assessment roll as re-cast. The appellants prosecute this appeal.

The facts were stipulated, and the only question presented is whether the improvement is a local improvement or an improvement which should have been paid for by general taxation.

The stipulation shows that the village of Downers Grove is a municipal corporation having an estimated population of 9000, located on the main line of the Chicago, Burlington and Quincy railroad, twenty-one miles west of the Union station in Chicago; that about the year 1897 the village authorities provided a water supply for the inhabitants of the village, which consisted of several wells, pumping equipment and a pumping house, which were paid for by general taxation; that the population of the village was at that time about 2700; that the water supply and pumping station were at that time located on Belmont street about three blocks west of Main street; that a cast-iron distributing main of 12-inch internal diameter was laid at that time connecting the source of supply throughout the major portion of the village and was paid for by special

assessment; that the main ran easterly in Belmont street and Warren avenue and connected with a 10-inch main in Main street, which main was laid southerly along Main street to the stand-pipe, located at Orchard and Main streets; that the business district of the village at that time was located on South Main street between Warren avenue and Orchard street; that the 10-inch main was at that time, and now is, the only main serving the business district; that in the year 1924 the village authorities determined to abandon the wells and pumping equipment on Belmont street and locate the necessary pumps and equipment at the southwest corner of Park avenue and Randall street, the cost of which was paid from money derived from the sale by the village of its electric light plant; that the 10-inch main in Main street was connected with the new source of supply with an existing 6-inch main in Randall street leading to and connecting with an 8-inch main in Maple avenue, the 8-inch main connecting with the 10-inch main in Main street at the corner of Main and Maple avenue; that on October 29, 1925, Downers Grove special assessment No. 93 was confirmed to pay the cost of a 12-inch distributing main more than three miles in length, in a portion of the village other than that here assessed; that on the 15th of June, 1922, special assessment No. 60 was confirmed, providing for a 10-inch main in certain streets connected with the 12-inch main constructed under special assessment No. 93; that on the 29th day of November, 1926, the board of local improvements of the village adopted a resolution providing for the laying of a 12-inch distributing main in certain streets in portions of the village other than that herein assessed, to be paid by special assessment No. 125; that this 12-inch main will connect with the present source of supply and also connect with the 12-inch main in the eastern portion of the village and also with the 12-inch main in the western portion of the village, thus forming a circuit; that none of the property

involved in the instant case has been assessed for the improvement contemplated by special assessment No. 125; that the improvement in the instant case consists of the laying of a 12-inch cast-iron distributing main connected with and running westerly. from the present source of supply located at Park avenue and Randall street, on Randall street to Washington street, thence north on Washington street to Railroad street, thence west on Railroad street to Main street and connecting with the present 10-inch main in Main street; that all of the 12-inch distributing mains are a part of a connected system of water mains in the village, being connected by means of divers 4-inch, 6-inch and 8-inch laterals and 10-inch sub-mains; that the 12-inch main provided for in the instant case connects also with an 8-inch lateral in Maple avenue, and said 8-inch lateral also connects with the 10-inch main in Main street; that no mains have heretofore been laid in Washington street between Maple avenue and Railroad street, and that the property abutting on Washington street receives a direct benefit from the construction of this improvement, and that the property located on Railroad street between Washington and Main streets also receives a direct benefit, being served at the present time by only a 4-inch main; that the change from the old location to the new was caused by the lowering of the water level in the district, the failure of one of the village wells and the inability of the village to clean another well in which the casing had rusted and fallen into the well, blocking it.

The total amount of the assessment was $18,886. In the assessment roll as re-cast the property fronting on Washington street from Maple avenue to Railroad street, a distance of 764.81 feet, which before had no water service, was assessed for the equivalent of the cost of a 6-inch main, at $2.70 a foot. None of the objectors in the county court and none of the appellants in this court own property on Washington street, and none of their property has

been assessed upon the theory of a direct benefit and no question is raised in this case as to the assessment with reference to that property. The property zoned for business and industrial purposes, being the property of appellants and others, was assessed 9734.37 feet at $1.16 a foot, or $11,471.81. Public benefits were fixed at $1402.15. The territory in the village zoned for multi-family apartment use was for the re-cast roll assessed 9687.60 feet at forty cents a front foot, or $3947.04.

It is the contention of appellants that the improvement in this case, except as to the premises assessed for a direct benefit, is not a local improvement but is an improvement that should be paid for by general taxation; that the insufficiency of the water supply was produced by the increased demands created by the increased population, and that when the village authorities saw fit to abandon the old equipment and wells and purchase new wells and new equipment, then the connection of these new wells with the system of mains as contemplated in this improvement was a part of the expense of the installation of the new wells and was an expense that should have been borne by general taxation and paid for in the same manner that the wells, reservoir and pumps were paid.

Whether an improvement is local or general depends upon the nature of the work, the situation of the improvement, the surrounding conditions, and whether the substantial benefits to be derived therefrom are local or general in their nature. (*City of East St. Louis* v. *Vogel,* 276 Ill. 490; *Harmon* v. *Village of Arthur,* 309 id. 95; *City of Springfield* v. *Springfield Railway Co.* 296 id. 17.) Whether an improvement is local or general is a question of law, but whether the facts in a particular case bring an improvement within the definition of a local or general improvement is a question of fact, to be determined from all the facts and circumstances established by the evidence. (*City of Waukegan* v. *DeWolf,* 258 Ill. 374.) Whether

or not an improvement is local or general depends upon the nature of the improvement and whether the substantial benefits to be derived are local or general in their nature. If its purpose and effect are to improve a locality it is a local improvement although there is incidental benefit to the public, but if the primary purpose and effect are to benefit the public it is not a local improvement although it may incidentally benefit property in a particular locality. (*City of Waukegan* v. *DeWolf, supra.*)    The fact that an improvement will be of advantage to the city does not change its character as a local improvement if primarily of material advantage to the adjacent property, and where the improvement enhances the value of adjacent property as distinguished from benefits diffused by it throughout the municipality it is a local improvement.    *Village of Glencoe* v. *Hurford,* 317 Ill. 203; *Northwestern University* v. *Village of Wilmette,* 230 id. 80.

The village water supply taken from the new wells at Randall street and Park avenue began in February, 1924. After that time and prior to the passage of the ordinance in question the village had constructed and laid a 12-inch distributing main in the westerly, northerly and easterly sections of the village more than three miles in length, the cost of which was paid by special assessment upon the property benefited.   Other 12-inch mains had also been laid after that time under special assessment No. 125, and none of the property involved in the instant case had been assessed for these improvements, which are similar in their nature to the improvement here in question.   It would be manifestly unjust to now call upon the property owners who had paid those assessments to contribute to the payment of this improvement also.   At present the water is delivered from the new wells by pumps into 6-inch mains on Park avenue, and travels from there through a 6-inch main upon Randall street to Washington street, thence through a 6-inch main on Washington street to Maple ave-

nue, and through an 8-inch main on Maple avenue to a connection with a 10-inch main on Main street. In the business and industrial sections of the village there is one tap for every twenty-five feet of frontage, while in the residence section there is, on an average, one for every fifty feet of frontage, and the water consumption in the business and industrial sections is three times more per tap than in the residence sections. The business, industrial and apartment sections contain buildings one, two and three stories in height, which, by reason of their construction and proximity to each other, increase the fire hazard to a considerable extent. The Illinois Inspection Bureau, which acts for cities and villages under 20,000 inhabitants to advise the officials of such cities concerning the location and size of water mains, etc., and reports to insurance companies the character and conditions of all those factors which influence insurance rates for the towns, made an inspection of the conditions in the village of Downers Grove, and it was upon the advice of this bureau that the construction of the improvement in the instant case was planned. This bureau pointed out in its report to the village that due to the fact that the whole supply of water for the district in question must travel through quite a length of small pipe (six and eight inches) it did not furnish the business district with adequate protection against a big fire on account of lack of proper pressure, and it was to remedy this evil that the improvement ordinance in question was passed. From these facts it will be seen that the business, industrial and multi-family apartment districts had a direct interest in having the improvement made and that the improvement would enhance the value of the property in those districts as distinguished from benefits diffused by it throughout the municipality.

Under the evidence in the case the court properly held the improvement to be a local improvement, and as no question was raised by the objectors as to the amount of

the special assessment or its proper distribution it properly entered judgment confirming the assessment roll.

The judgment of the county court is therefore affirmed.

*Judgment affirmed.*