MINER HINMAN ET AL., APPELLEES, V. FRED L. TEMPLE ET
AL., APPELLANTS.

274 N. W. 605

FILED JULY 22, 1937. No. 30121.

*James T. Keefe, Beeler, Crosby & Baskins* and *Robert B. Crosby,* for appellants.

*Halligan, McIntosh & Halligan, contra.*

*Richard C. Hunter,* Attorney General, *Bert L. Overcash* and *W. J. Courtright, amici curiæ.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

CARTER, J.

This is a suit for an injunction brought by the plaintiffs to enjoin the defendants from the construction of a viaduct in the city of North Platte, to enjoin the sale of bonds to pay right of way damages therefor, and to restrain the

levying of any general property tax to pay the right of way damages growing out of the construction of the viaduct. The trial court enjoined the levying of a general property tax in the city of North Platte for the payment of damages or for the payment of bonds issued to raise money for that purpose. From this decree, defendants appeal.

It is the contention of the plaintiffs that the statute authorizing the issuance of the bonds of the city to pay damages resulting from the construction of the viaduct is unconstitutional for the reason that it attempts to amend numerous sections of the statutes of Nebraska without setting out the sections so amended, and repealing the old, contrary to section 14, art. III of the Constitution, and, for the further reason, that said statute provides for the levy of a general tax to pay for a local improvement contrary to section 6, art. VIII of the Constitution of Nebraska.

The act of the legislature authorizing the proceedings in the case at bar is Senate File No. 7, chapter 34, Laws 1935, Special Session, as amended by Senate File No. 14, chapter 35, Laws 1935, Special Session, the title to which is as follows: "An act to permit cities of the first class, second class and villages to avail themselves of federal funds for the construction of subways and viaducts over or under railroad tracks, providing methods and procedure therefor, including the acquiring of additional ground therefor, the determination of damages consequent to such taking and construction, provisions for compensation for property taken or damaged, methods for payment of damages, and the levy of taxes and issuance of bonds and warrants for such payment, and granting powers to such cities and villages and to the department of roads and irrigation to carry such projects into effect, and providing full and complete provision for all matters incident thereto; and to declare an emergency."

An examination of the act discloses that it is a complete and independent act. Such being the case, section 14, art. III of the Constitution, does not require that other statutes with which it conflicts should be set out as amended and

accompanied by a repeal of the older conflicting statutes. The applicable rule is stated in *Scott v. Dohrse,* 130 Neb. 847, 266 N. W. 709, as follows: "If an act is complete and independent in itself, it may amend or modify the provisions of existing statutes without controverting the provisions of the Constitution relating to amendments." Other cases to the same effect are: *State v. Price,* 127 Neb. 132, 254 N. W. 889; *State v. Lehmkuhl,* 127 Neb. 812, 257 N. W. 229.

The contention is made that a viaduct is a local improvement and that the provisions of the statute under consideration providing for the payment of damages by taxing all of the property in the city violate section 6, art. VIII of the Nebraska Constitution. This section of the Constitution is as follows: "The legislature may vest the corporate authorities of cities, towns and villages, with power to make local improvements by special assessments, or by special taxation of property, benefited. For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same."

The term "local improvement" is not defined by statute. The difference between a local and general improvement is well discussed in the case of *Village of Downers Grove v. Bailey,* 325 Ill. 186, 156 N. E. 362, wherein the court said: "Whether an improvement is local or general depends upon the nature of the work, the situation of the improvement, the surrounding conditions, and whether the substantial benefits to be derived therefrom are local or general in their nature. * * * Whether an improvement is local or general is a question of law but whether the facts in a particular case bring an improvement within the definition of a local or general improvement is a question of fact, to be determined from all the facts and circumstances established by the evidence. * * * Whether or not an improvement is local or general depends upon the nature of the improvement and whether the substantial benefits to be de-

rived are local or general in their nature. If its purpose and effect are to improve a locality it is a local improvement although there is incidental benefit to the public, but if the primary purpose and effect are to benefit the public it is not a local improvement although it may incidentally benefit property in a particular locality. * * * The fact that an improvement will be of advantage to the city does not change its character as a local improvement if primarily of material advantage to the adjacent property, and where the improvement enhances the value of adjacent property as distinguished from benefits diffused by it throughout the municipality it is a local improvement."

Also, in the case of *City of Waukegan v. DeWolf*, 258 Ill. 374, 101 N. E. 532, the court said: "A local improvement has been defined to be a public improvement which, by reason of its being confined to a locality, enhances the value of adjacent property as distinguished from benefits diffused by it throughout the municipality. * * * This definition, which was intended to be explanatory of a 'local improvement,' has not, perhaps, added very much to the words themselves. As was said in *State v. Reis*, 38 Minn. 371, the only essential elements of a local improvement are those which the term itself implies, viz., that it shall benefit the property on which the cost is assessed in a manner local in its nature and not enjoyed by property, generally, in the city. The definition given in *Crane v. Siloam Springs*, 67 Ark. 30, is: 'If we look for the technical or legal meaning of the phrase "local improvement," we find it to be a public improvement, which, although it may incidentally benefit the public at large, is made primarily for the accommodation and convenience of the inhabitants of a particular locality, and which is of such a nature as to confer a special benefit upon the real property adjoining or near the locality of the improvement.' An improvement is not a local improvement, within the meaning of the Constitution and statute, merely because it is constructed in a particular locality, since every improvement has a particular location, and is also local in the sense of being nearer to some per-

sons and property than to others. * * * Such a rule would authorize a special assessment for every improvement in a municipality. Neither is an improvement of a local nature merely because it confers a greater benefit on particular pieces of property than upon others throughout the municipality."

And, likewise, in the case of *Hurd v. Sanitary Sewer District,* 109 Neb. 384, 191 N. W. 438, we said: "The main sewers and disposal plant in question are general improvements conferring general benefits upon all property in the city—the disposal plant because it benefits all property in the city alike; the main sewers, for the same reason, to the extent that they serve the public generally as distinguished from the special service to abutting owners. 'A local improvement, within the meaning of the statute, is a public improvement, which, by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it through the municipality.' *City of Chicago v. Blair,* 149 Ill. 310. A valuable discussion of the difference between general and local improvements will be found in *City of Waukegan v. De-Wolf,* 258 Ill. 374."

Under these holdings it becomes necessary to determine from the evidence whether the viaduct is a general or local improvement. The city of North Platte is a city of the first class having a population approximating 12,000 persons. The evidence shows that the viaduct is being built on Jeffers street, one of the main streets of the city, at a point where it crosses the main line and switch tracks of the Union Pacific Railroad Company, and extends approximately 300 feet on each side of the railroad right of way. The record also discloses that U. S. Highway No. 30, commonly called the Lincoln Highway, crosses the Union Pacific Railroad tracks at this point. They are also crossed by U. S. Highway No. 183, commonly called the Great Plains Highway. Both of these highways are main transcontinental highways, carrying very heavy traffic. The city of North Platte is divided by the Union Pacific Railroad

tracks into a north and a south section. Many business places, residences and the railroad shops are located on the north side, while the post office, courthouse, high school, many business houses and residences are located on the south side. Several witnesses testified that the property adjacent to the viaduct was damaged thereby and that abutting properties received no benefit from the improvement. This evidence is not disputed in the record. Whether or not this viaduct is a local improvement to be paid for by special assessment within the purview of section 6, art. VIII of the Constitution, is dependent entirely upon the question of special benefits to abutting property owners. If the primary purpose of the improvement is to benefit the locality where it is constructed, it is, of course, a local improvement within the meaning of the constitutional provision. But, on the other hand, if the primary purpose and effect of the improvement is to benefit the public generally, it is not a local improvement although it may incidentally benefit property owners in the particular locality. Under the evidence shown by the record, we are constrained to hold that the viaduct in question is not a local improvement within the meaning of that term as used in section 6, art. VIII of the Constitution.

The question immediately arises whether the city of North Platte has authority to aid in the construction of a viaduct with funds raised by general taxation. It must be conceded that the damages occasioned by the construction of a viaduct are a necessary part of the costs of such construction. *Phœnix Mutual Life Ins. Co. v. City of Lincoln*, 91 Neb. 150, 135 N. W. 445. The construction of a viaduct over a railroad for public use is clearly a public improvement which may be paid for by special assessment to the extent that the abutting property is benefited, and by general taxation if it is not. In *Hurd v. Sanitary Sewer District, supra*, we said: "Special assessments can only be levied upon property specially benefited, and only to the extent of such benefit. They may not be based upon a general benefit which results from a public improvement; such

benefit is a proper basis for general, but not special, taxation. * * * Ample power to construct sewers is conferred by this and other sections of the statutes governing cities of the second class; but the cost thereof, beyond the special benefits conferred, must be raised by general taxes upon all the taxable property of the city, real and personal, on the basis of valuation." The viaduct in question being a public improvement of general benefit, we know of no constitutional provision that prevents the city of North Platte from levying a general tax to provide for the payment of its share of the cost.

The contention is made that the exemption of the railroad company from the payment of involuntary contributions violates sections 1, 2 and 6, art. VIII of the Constitution.

The part of the act in question reads as follows: "Grade crossing projects shall be undertaken on a basis that will impose no involuntary contributions on the affected railroads, and shall not interfere with the use of present railroad tracks without the consent of such railroad." Laws 1935, Special Session, ch. 34, sec. 2.

Section 1, art. VIII of the Constitution, provides: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the legislature may direct; but taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, and taxes uniform as to class may be levied by valuation upon all other property. Taxes other than property taxes, may be authorized by law. Existing revenue laws shall continue in effect until changed by the legislature."

That part of section 2, art. VIII, material to this case, provides: "No property shall be exempt from taxation except as provided in this section."

Section 6, art. VIII, has been hereinbefore set out in this opinion.

It is the contention of plaintiffs that, in exempting the railroads from the payment of involuntary contributions,

the statute thereby exempts them from the payment of their general taxes levied for the payment of the city's share of the cost of the viaduct. If it were the intention of the legislature to exempt the payment of such taxes, the contention of plaintiffs would be correct. However, it is the duty of this court to put a construction upon the statute in harmony with the Constitution, if it is possible to so do. In our opinion it was the intent of the legislature to exempt the railroad companies from the payment of special assessments on benefits received and not to exempt them from the payment of any general tax. This being true, the act in no way contravenes the sections of the Constitution mentioned.

We necessarily conclude that the questions raised by plaintiffs do not disclose any conflict between the viaduct statute and section 14, art. III, and sections 1, 2 and 6, art. VIII, of the Constitution of Nebraska. The trial court was in error when it enjoined the defendants from levying or collecting any taxes upon the taxable property of the city for the payment of the viaduct bonds issued by the city, or of the interest accumulating thereon, and in enjoining the issuance of additional bonds or warrants for the payment of damages authorized by the electors of the city. The judgment of the trial court is reversed and the action dismissed.

REVERSED AND DISMISSED.