STATE, EX REL. JOSEPH F. KASPAR, RELATOR, v. FRANK LEHMKUHL, COUNTY CLERK, RESPONDENT.

FILED NOVEMBER 13, 1934. No. 29391.

*Harvey M. Johnsen* and *Schiefelbein & Donato,* for relator.

*Paul F. Good, Attorney General, George W. Ayres* and *Clyde R. Worrall,* for respondent.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and REDICK, District Judge.

ROSE, J.

This is an application by Joseph F. Kaspar, relator, for a peremptory writ of mandamus commanding Frank Lehmkuhl, as county clerk of Saunders county, respondent, to include in the printed forms of ballots for the election to be held November 6, 1934, party circles in which any elector may vote a straight party ticket by making a cross in a circle.

Relator is a candidate for state senator and is also an

elector who desires to vote a straight party ticket by making a cross in the party circle. His demand for the writ is based on the ground that the legislative act of 1933, purporting to abolish the party circle, is unconstitutional and void, leaving in full force and effect former election laws, requiring party-circle ballots. Respondent refused to furnish them on the asserted ground that the legislature of 1933 repealed the statutory provisions for party-circle machinery at elections.

The question presented for determination is the alleged invalidity of the repealing act, a copy of which, including the title, follows:

"An act relating to elections; to abolish the party circle; and to repeal all acts and parts of acts in conflict therewith.

"Be it Enacted by the People of the State of Nebraska:

"Section 1. Notwithstanding any more general law respecting elections, all official ballots cast in election for public officers within this state shall not contain thereon any party circle or provision for voting a straight party ticket by the making of a cross or mark.

"Sec. 2. All acts and parts of acts in conflict herewith are hereby repealed.

"Approved February 18, 1933." Laws 1933, ch. 54, Comp. St. Supp. 1933, sec. 32-526.

The position of relator is that this act was passed in violation of the following provisions of the Constitution:

"No bill shall contain more than one subject, and the same shall be clearly expressed in the title. And no law shall be amended unless the new act contain the section or sections as amended, and the section or sections so amended shall be repealed." Const. art. III, sec. 14.

Was this provision of the Constitution violated by the act of 1933, purporting to abolish the party circle? The affirmative was vigorously presented in printed briefs and orally at the bar. It was argued that the new act was amendatory, without so stating in the title, and did not contain the sections amended nor repeal the original sec-

tions. The sections pointed out by relator as amended, but not contained in the new act nor repealed, are 32-503, 32-504, and 32-514, Comp. St. 1929. Section 32-503 directs how official ballots shall be prepared and what they shall contain, giving details in regard to paper, ink, type, candidates, party names, proposals, measures and other features, including party circles for voting a straight ticket. Section 32-504 provides:

"The form of the official ballot shall as near as possible conform to schedule 'A' hereof. Each division containing the names of the office and a list of the candidates nominated for such office shall be separated from other groups by a distinct and heavy line."

Schedule "A," to which reference is made in section 32-504, is a printed form for official ballots. In a space or group between two black lines preceding the names of candidates and party names, the party circles appear thus:

---

To Vote a Straight Ticket Make a Cross Within
Your Party Circle

O ............................................................ Democrat

O ............................................................ Progressive

O ............................................................ Republican

O ............................................................ Socialist

O ............................................................ Prohibition

O ............................................ People's Independent

---

Section 32-514 requires the printing and posting of cards of instructions to electors according to schedule "B" which directs voters how to mark ballots for straight party tickets, for individual candidates, for proposed constitutional amendments and for measures submitted by initiative or referendum.

Relator contends that the legislature attempted to change the three sections enumerated by repealing a part of each, thus leaving the other provisions in force, and that the legislation was a mere void amendment, because the new act did not contain the sections amended nor re-

peal the old sections. There was a formidable argument on the following proposition:

"A legislative act which has no subject or object of its own, except to change or modify the provisions of an existing statute or statutes, and no reason for enactment except to effect such an amendment, is within the prohibition of section 14, article III of the Constitution."

In support of this doctrine the following language from an early opinion is invoked:

"That an act, complete in itself, may so operate on prior acts as to materially change or modify them, without being within the mischief designed to be remedied by, or repugnant to, this provision of the Constitution, is doubtless true. * * * But where, as in the case before us, the act is not complete in itself, but in its effect is simply and clearly amendatory of a former statute, it falls directly within the constitutional inhibition, and is void. Nor will it make any difference, in this respect, whether the new statute by its title, or in the body of the act, assume to be amendatory or not; it is enough if it clearly have that effect." *Smails v. White,* 4 Neb. 353.

On the same point other early cases are cited, but a more liberal interpretation of the constitutional provision relating to amendments has been favored in later cases. In a current text on the entire body of the law it is said:

"These constitutional provisions have never, in construction, been given a rigid effect, but have been held applicable only to such statutes as come within their terms, when construed according to the spirit of such restrictions, and in the light of the evils to be suppressed. They should receive a reasonable and liberal construction, with the view of upholding the acts of the legislature, and not unnecessarily hampering or embarrassing it in its work; and the courts will not extend the construction of the prohibition beyond the mischief it was designed to prevent. On the other hand, the provisions will not be given so loose a construction as will virtually nullify them." 59 C. J. 866.

The mischief which the Constitution was designed to

prevent was considered by Judge Cooley, an outstanding author on constitutional law, who said:

"The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent." *People v. Mahaney,* 13 Mich. 481.

Judge Letton once called attention to this Michigan case and remarked that it had been repeatedly cited and approved by the supreme court of Nebraska. *State v. Ure,* 91 Neb. 31, 37. An eminent authority on statutory construction stated the modern rule as follows:

"Where an act does not purport to be amendatory, but is enacted as original and independent legislation, and is complete in itself, it is not within the constitutional requirement as to amendments, though it may, by implication, modify or repeal prior acts or parts thereof." 1 Lewis' Sutherland, Statutory Construction (2d ed.) sec. 239.

The same writer noted the tendency of the Nebraska supreme court to depart from strict to liberal construction and cited cases, saying:

"It has been held in Nebraska that if a statute is intended to be amendatory, and is clearly so, it is within this provision of the Constitution, though framed as an independent act and complete in itself; that being amenda-

tory, it should be expressly so; that the law as amended should be given in full with such reference to the old law as will clearly show for what the new law is substituted. But the later cases fully establish the law of that state in harmony with the current of authority. A statute 'which merely furnishes a rule of construction for prior statutes, and is not in terms an amendment, is not within the meaning of this constitutional regulation; it need not set forth the statutes affected. Nor is a statute amendatory which repeals in general terms all acts and parts of acts which are inconsistent with its provisions." 1 Lewis' Sutherland, Statutory Construction (2d ed.) sec. 239.

The Constitution itself recognizes legislative power to amend or repeal existing statutes. Legislation may be changed by either method. Acts, sections and severable parts of sections may be eliminated by independent repealing acts covering the entire subject of the new enactment. The party circle act is clearly not within the mischief to which the constitutional provision is directed. A concealed or surreptitious purpose is not even inferable. What was in the minds of the lawmakers was disclosed by both the title and the body of the act. The legislation assailed by relator is entirely negative. It does not enact anything new. It strikes out of existing law by repeal the right of electors to use party-circle ballots—a legislative privilege formerly granted. What is eliminated is severable matter relating to the party circle—a subject well understood and a voting device publicly challenged in advance as a questionable part of election machinery. The part repealed is definite and certain. What remains is free from doubt or confusion. The repeal does not require the services of an expert to determine what was taken out of the old sections and what the new law left in them. Old and new provisions are not mingled by the abolishment of the party circle.

The title of the act refers to "elections," but the real subject is abolishment of the party circle. The enactment itself is limited thereto and covers that entire subject. It

is well-settled law that the title of a legislative bill may be broader than the body of the act without making the legislation unconstitutional. Though the repeal makes changes in old sections, it is limited to the abolishment of the party circle—severable matter in former legislation. It is a familiar rule of interpretation that an independent act covering the entire subject of legislation may change or repeal former enactments in conflict with new provisions.

In support of relator's position, the recent case of *State v. Bauman,* 126 Neb. 566, was cited, but the opinion therein does not seem to control the decision herein. In that case the court held the act assailed was ,strictly amendatory, containing nothing of an independent nature, but evincing a legislative intent to mingle new changes with old provisions—an inhibited evil.

Relator's grounds of invalidity would apply to many other enactments, as shown by the history of recent legislation. A notable example is the nonpartisan judiciary law of 1913, an act passed under the following title:

"An act providing for the nonpartisan nomination, and the nonpartisan election, of judicial officers and to repeal all acts and parts of acts in conflict with the provisions of this act." Laws 1913, ch. 96.

That legislation materially changed provisions of the Australian ballot law and of the primary election law without making any specific reference in the title or body of the new act to the sections changed. Old provisions were made inapplicable to candidates for judicial offices and retained as to candidates for executive and legislative offices. The new act did not contain the changed sections nor repeal them by direct reference thereto. The nonpartisan judiciary act has been considered a statute complete in itself and one relating to an independent subject. *State v. Penrod,* 102 Neb. 734. That act has been observed by all three departments of government. Many other acts involving the same legislative practice may be found in the statute books and their invalidity should not be implied by

a strict or technical construction of the constitutional provisions relating to amendments, when not required by the purpose or import of the Constitution.

The question at bar is not whether the lawmakers adopted the best method of changing the law, but is whether the legislation itself was enacted in a manner inhibited by the Constitution. The better view of the act in question seems to be that it is not within the mischief inhibited by the constitutional provisions relating to amendments, that it is a repeal as distinguished from an amendment, and that it is independent legislation covering the entire subject of abolishing the party circle and leaving unrepealed parts of the old law with clear and definite meanings.

In reaching this conclusion nothing in the briefs and arguments of the parties nor in numerous briefs of *amici curiæ* has been overlooked.

WRIT DENIED.