THE COUNTY OF DAWSON, APPELLEE, V. SOUTH SIDE
IRRIGATION COMPANY, APPELLANT.

20 N. W. 2d 387

FILED NOVEMBER 2, 1945.   No. 31913.

*R. E. Bannister*, for appellant.

*Bernard B. Smith, W. A. Stewart, Jr.,* and *John M. Neff*, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, and CHAPPELL, JJ.

MESSMORE, J.

The South Side Irrigation Company, a common carrier of irrigation water, instituted condemnation proceedings in the county court against Dawson County to appropriate a limited easement in real estate upon and along 14 feet of one side of a 66-foot road for a distance of about one-half mile, for the purpose of running irrigation water thereon for short periods of time, not exceeding 30 days in any one year, and without overflowing or damaging the road, drainage or other property and there being no other ditch or lateral along said road.   In compliance with section 46-607, Comp. St. 1929, now section 46-251, R. S. 1943, appraisers were appointed, damages assessed for the appropriation and paid into court.   The county appealed to the district court and in its petition therein alleged that the condemnation statute, section 46-251, R. S. 1943, is unconstitu-

tional. The trial court found that said section of the statute had been held unconstitutional by this court in the case of *State v. Central Nebraska Public Power & Irrigation District,* 143 Neb. 153, 8 N. W. 2d 841. The part of the statute involved in the instant case was not under consideration in that case, and the trial court was in error in so holding. Motion for new trial was overruled. The irrigation company appeals.

For convenience the South Side Irrigation Company will hereinafter be referred to as appellant, and the county as appellee.

The appellee contends that section 46-251, R. S. 1943, is unconstitutional for the reason that it is violative of article III, section 14, of the state Constitution which provides in part: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title. And no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed."

In 1895, House Roll 443 was enacted. It is found in Laws 1895, ch. 69, p. 244, and the section here involved is section 40, p. 259. The title to the act was in part as follows: "AN ACT prescribing regulations for the appropriation, distribution and use of water in the construction and maintaining of canals, ditches * * * for the purpose of irrigation, * * * and water power; for the diversion and confining, retention, storage and distribution of water, * * * ; the condemnation of lands for the right of way of work for such purposes, * * * ." Section 40 of the act provides: "All persons, companies, corporations, or associations being desirous of constructing any of the works provided for in the preceding sections, shall have the right to occupy state lands, and to obtain right of way over and through any highway in any county in this state for such purposes without any compensation therefor." Section 40 appears in Cobbey's Annotated Statutes, 1909 as section 6819. The language is identical with that found in the Laws of 1895, *supra.*

In 1911, the Legislature amended section 6819 of Cobbey's Annotated Statutes, 1909. Laws 1911, ch. 153, p. 497. The title to the act read in part: "AN ACT to amend" (then several sections of the statute are set out among which is section 6819 of Cobbey's Annotated Statutes of Nebraska for 1909) "relative to irrigation, and to repeal said original sections as now existing." And, in Laws 1911, p. 513, "That section 6819 of Cobbey's Annotated Statutes of Nebraska for 1909 * * * be amended to read as follows": (the amendment for the purpose of this case in addition to the language contained in the section heretofore set out, follows) " * * * All such persons, companies, corporations or associations may obtain the right of way for a like purpose along, parallel to and upon one side of any sixty-six foot highway by condemnation proceedings as hereinafter provided, the same to in no way interfere with the proper drainage of such highway, * * * . Provided, * * * , that not more than sixteen feet in width shall be taken from the side of any highway * * * ." The language is substantially the same as appearing in section 46-251, R. S. 1943, except that the 1911 enactment as amended was included in the Civil Administrative Code of 1919 and some changes in the wording made at that time. The language appearing in the Laws 1919, ch. 190, title 7, article 5, division 3, section 7, p. 848 is identical with the language as it now appears in section 46-251, R. S. 1943.

In Laws 1919, article 3, section 1, p. 860, there is a saving clause attached to such statute that provides in substance that in the event any part of the act is declared unconstitutional or unauthorized by law, or in conflict with any other part of the act, that such part declared unconstitutional shall not affect any other section or part of the act, but will affect only the part so declared to be unconstitutional, and that each section, part or subdivision thereof and each article and title so far as an inducement for the passage of the act is concerned, is independent of every other section or part, etc. It is clear from the saving and

inducement clause that the legislature intended each part of every section of the law to stand by itself and to be effective unless specifically found unconstitutional.

The appellee's contention is that the amendment to the original statute was not covered by the title of the act and was not germane to the subject matter of the original sections proposed to be changed, and is violative of article III, section 14, of the Constitution of Nebraska.

This court in *Miller v. Hurford,* 11 Neb. 377, 9 N. W. 477, said: "When the title of an act is to amend a particular section of a statute, the proposed amendment must be germane to the subject matter of the section sought to be amended or it will be void." In speaking of the constitutional provision heretofore set out, the court said: "Our constitutional provision that 'no bill shall contain more than one subject, which shall be clearly expressed in its title,' is but making inviolable the rule governing legislative bodies, that 'no proposition or subject different from that under consideration shall be admitted under color of amendment' * * * ."

In *State v. Tibbets,* 52 Neb. 228, 71 N. W. 990, the following is quoted with approval from *Miller v. Hurford, supra:* "That an amended section must be germane to the section amended does not mean that it must be confined to the same limits; that it cannot be enlarged and extended beyond the limits of the original section. It only means that it must be confined to the same subject-matter, or have the same object in view, and this subject-matter or object may be general in its nature. So long as the legislature fairly confines itself to the object of the original section it is sufficient.

"The purpose of the constitutional provision under consideration, * * * is to give notice, through the title of the bill, to the members of the legislature and the public, of the subject-matter of the projected law,—in other words, that the title should clearly indicate the legislation embraced in the bill. * * * The title to a bill may be general, and it is not essential that it specify every clause in the proposed statute. It is sufficient that they are referable and cognate to the subject expressed. When the subject is expressed in general

terms, everything which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is embraced in and authorized by it. If the subject-matter is within the scope of the title the constitutional requirement is met."

In *Spier v. Thomas,* 131 Neb. 579, 269 N. W. 61, this court said: " 'The provisions of * * * the Constitution should be liberally construed so as to uphold a provision in a legislative act which, though not specifically expressed in the title, is germane to the subject matter, and comprehended within the objects and purposes, of the act.' *Pandolfo v. State,* 120 Neb. 616, 234 N. W. 483. It is not necessary for the title to analyze the bill in detail. In *State v. Price,* 127 Neb. 132, 254 N. W. 889, it is said: 'If by a fair and reasonable construction the title calls attention to the subject-matter of the bill, it may be said that the object is expressed in the title. * * * Neither is it necessary that the title inform its readers of the specific contents of the bill. If it indicates the subject of the proposed·legislation, it meets all essential requirements. It needs not that it be a complete abstract and epitome of the contents of the bill.' " See, also, *State v. Lehmkuhl,* 127 Neb. 812, 257 N. W. 229; *Lennox v. Housing Authority of City of Omaha,* 137 Neb. 582, 290 N. W. 451.

We conclude that the amendment to the original statute is covered by the title of the act and is germane to the subject matter of the original sections proposed to be changed, and is not violative of article III, section 14, of the Constitution.

The appellee contends that the proposed condemnation interferes with the proper drainage of the highway in question and as such is prohibited by provisions of section 46-251, R. S. 1943. The appellee's petition alleges that the statute provides no right-of-way for irrigation purposes shall be obtained over and upon the highway right-of-way where the same interferes with the proper drainage of the highway; that highway drainage into the ditch, in addition to the irrigation water, will cause the same to overflow to

the damage of the county's roadbed and to the damage of adjoining farms, and when used for irrigation purposes would cause the ditch, its banks and the shoulders of the highway to become saturated and soft, and make the highway dangerous and unsafe for public travel and unworkable for road machinery for long periods of time after the flow of water ceased. The appellant's answer is a general denial.

By agreement the case was tried on the pleadings in the county and district court. On this phase of the case, by a supplemental journal entry the court decreed that all of the 66-foot right-of-way is being used for road purposes; that the evidence shows that the road is elevated and the dirt for the elevation was removed from the south side of the road, and in the event further grading and elevation is necessary the dirt for said purposes will have to be taken from the north road ditch; that should condemnation proceedings be affirmed the defendant would require a right and easement in the north road ditch for irrigation purposes, and that the same would be inconsistent with the use of the ditch for road purposes and the county would have no right to interfere with the same, and that the condemnation should be denied. The appellant contends there is no sufficient evidence to sustain the judgment of the trial court. The following constitutes the evidence pertinent to a determination of this contention.

The parties stipulated, in substance, as follows: That the easement sought is a strip of land not exceeding 16 feet in width along and upon one side of a public highway 66 feet wide, and that there is no lateral or irrigation ditch on the other side of the highway; that the appellee has a drainage ditch for surface water along both sides of the highway, the one on the south being much larger and deeper than the one on the north where appellant's easement is sought; the purpose of the easement is to carry a small amount of water for irrigation to lower lands for short periods of time, not exceeding 30 days in any one year; that during the pendency of this action the appellant has used such portion of the highway in accordance with the easement and during this

period the appellee has suffered no damage on account thereof, and the easement has not interfered with the proper drainage of the highway or materially interfered with the usual use of the highway for such purposes; the approximate half-mile length of the easement has a total fall in level of seven feet and results in a reasonably fast-running stream in the bottom of the ditch when the easement is in use.

The record further discloses, by the testimony of a county commissioner familiar with the highway, that it is a 66-foot road running east and west, its surface is 24 to 35 feet in width and the balance is used for ditches. The drainage ditch on the north side of the highway is not a large ditch. Its average depth is from two to three feet below the traveled portion of the highway. The water flows through it from west to east along the highway and the flow at one point is nearly equal to the level of the adjoining land to the north, and at the highest point approximately within a foot of the surface of the highway. In the event the road would have to be elevated in the future, the dirt would have to come from the north ditch. Two or three years prior to trial of this action the drainage water flowing through the north ditch overflowed onto the fields north of the ditch and the county was threatened with litigation. Since that time no damage has accrued to the highway or adjoining land by the use of the ditch by appellant. He further testified that there was not a continual drop in the north ditch from the west to the east; that when he viewed the overflow of the water from the ditch, the water left the ditch west of the east corner, otherwise the flow would have been east and not north onto the farm land. To dispose of surface water from rainfall it is necessary to maintain both the north and south ditches. The damage arises when there is too much water in the north ditch and when that occurs the water overflows to the north onto the farm lands, and if a dike should be constructed along that section of the farm land, the water would back up and soften the surface of the highway; that due to the appellant's use of the ditch, heavy road

machinery could not be used, due to the wet condition of the highway. While the evidence discloses that maintainers have been used, it is probable that heavier road machinery would be required and this may be at a time when such machinery is within the supervisor district and the ditch is being used by the appellant. On cross-examination he was asked as to whether the overflow to the north, of which he spoke, was the result of certain floodwaters rather than any use of the ditch as a lateral for carrying irrigation water. His reply in effect was that it was not entirely; but at this particular floodtime the gates were open creating a flood condition in the ditch. The water then came down the highway from both the north and south ditches that lead to the crossroads where it enters into the side ditch and the north ditch, the two combining to produce the flood condition. His attention was directed to a part of the petition in condemnation to the effect that no changes are to be made in the construction or maintenance of the ditches, except a temporary cover at the cement culvert at the east end of the property and that the north ditch would only be used for 30 days each year and so run as to not cause overflow onto the traveled portion of the highway or abutting land, and, assuming the language to be true, would any damage result? His reply, in effect was, not unless it would come with a combination of floodwaters and irrigation.

The ditch on the south side of the highway is larger and deeper and constructed for the purpose of carrying off floodwater coming from the south hills.

The manager of the irrigation company testified that the use of the north ditch for irrigation purposes constituted the most feasible method in serving one water-user and to irrigate 25 acres of his land. He described the north ditch in substance as follows: That for the full half-mile and within a couple of hundred feet of the east end there is quite a slope and for that reason the stream is never large, and is relatively small until it reaches the last 200 feet where the ground is level, and then the bottom of the road ditch is about level from there on to where it is taken out in the

lateral, and then the stream becomes a little larger until it piles up at the east end. At the east end there would be a foot or a foot and a half of water. Along the other parts of the ditch the depth would be about six inches and at no point is the ditch more than two or three feet wide. While the ditch is in operation it is necessary to cover the drainpipe at the east end thereof, so the water would not go on down the road. If the drainpipe was not covered the water would flow east and north. The cover is removed when the ditch is not used for irrigation purposes. He further testified that there was no way in which the proposed operation of the ditch for irrigation purposes could interfere with the natural drainage of the highway because it was merely an addition to the water that would come from the hills, and the water coming from the hills runs into the south ditch, and that the appellant does not use the north ditch when it is necessary for such ditch to carry off drainage water.

There is a controversy in the evidence with reference to the location of a bridge that crosses the highway and connects the south road ditch to the north road ditch. The witness was asked the following question: "The flood waters from the hills can cross at this bridge and they do and can run into the north ditch as well as the south ditch and flow in an easterly direction? A. That is right."

In the event the county took dirt out of the north ditch it would not interfere with appellant's use thereof, as it would make no difference how deep the ditch would be.

The county commissioner, in rebuttal testified that there was a bridge at the southwest corner of the Kugler quarter-section connecting the south road ditch with the north road ditch. The Kugler quarter-section is a part of the land that was overflowed, about which the commissioner testified. He further testified, in assuming irrigation is proceeding and the ditches are full of water and a sudden rain develops, an inch or two, filling the ditch to overcapacity, then you have a flood condition.

From the evidence it appears that if the appellant acquired the right and easement contemplated, the same

would be inconsistent with the use of the road for drainage purposes, and within the meaning of the statute would constitute an interference with the proper drainage of the highway. We conclude the trial court did not err in dismissing the condemnation proceedings.

Other contentions of appellee are without merit and not necessary to a determination of this appeal.

The judgment of the trial court is affirmed.

AFFIRMED.

WENKE, J., participating on briefs.