OMAHA PARKING AUTHORITY, APPELLANT, v. CITY OF OMAHA, ET AL., APPELLEES.

77 N. W. 2d 862

Filed July 6, 1956. No. 33997.

*Wells, Martin, Lane, Baird & Pedersen,* for appellant.

*Edward F. Fogarty, Bernard E. Vinardi, Neal H. Hilmes, Irving B. Epstein, Herbert M. Fitle, Eugene F. Fitzgerald, John C. Burke,* and *August Ross,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action for a declaratory judgment to have the validity of the Parking Authority Law determined. The trial court found the law to be unconstitutional, and the plaintiff, Omaha Parking Authority, has appealed.

The Parking Authority Law consists of sections 14-1701 to 14-1725, R. S. Supp., 1955. It is admitted by the pleadings that the Omaha Parking Authority has been duly established under the provisions of the act. The petition alleges that plaintiff made a request to the city of Omaha for the right to enter upon the streets surrounding the county courthouse site for the purpose of

constructing parking facilities as provided by the law, and that a similar request was made to the county of Douglas to enter upon the courthouse site for the same purpose. The city of Omaha and the county of Douglas refused such requests on the ground that the Parking Authority Law was unconstitutional for the reasons set forth in the pleadings. The petition prays for a declaratory judgment finding the Parking Authority Law to be valid in all respects, for an order requiring the city of Omaha to grant the plaintiff the right to use the streets surrounding the courthouse site, and for an order requiring the county of Douglas to permit plaintiff to use the county courthouse site for the purpose of constructing parking facilities as authorized by the Parking Authority Law.

The city of Omaha contends that the Parking Authority Law is unconstitutional because it is special legislation in that it applies only to the city of Omaha and the county of Douglas. It is contended that the sole purpose of the act is the control of vehicular traffic which is a matter common to all cities and counties of the state. In this connection the act by its terms is made to apply only to cities of the metropolitan class. The term "county" as used in the act means the county in which the parking authority is located and necessarily refers only to counties containing cities of the metropolitan class in which parking authorities have been established by the Governor in accordance with the terms of the Parking Authority Law. Ordinarily the Legislature may properly enact laws applicable to all cities of a given class, even though there is only one city within such class. It is true that the handling of traffic is a problem on all the highways of the state, but to assert that the problem is the same in the congested areas of a metropolitan city as it is in other parts of the state is to ignore plain facts. The declaration of legislative policy contained in the act states that the business districts of metropolitan cities have become congested by the

great number of motor vehicles using the streets and the likelihood of a continued increase, that such traffic congestion has created a hazard to life and property of those using such streets, that there is insufficient space for the parking of motor vehicles on the streets, that off-street parking is required, and that the relieving of traffic congestion in the areas specified by the act is a matter of public welfare, of general public interest, and of state-wide concern in promoting the public safety and convenience. The findings of the Legislature as set forth in the declaration of policy contained in the act, while not absolutely controlling, are entitled to great weight. It is obvious that there is a direct relation between the size of a city and the amount of vehicular traffic using its streets; the larger the city the greater the traffic. It would seem that the Legislature could properly deal with the traffic problems of metropolitan cities without violating Article III, section 18, of the Constitution, prohibiting special legislation. It stands to reason that even if traffic problems existed in cities of other classifications, the remedy may be altogether different. The Legislature may classify the subjects, persons, or objects as to which it legislates if such classification rests upon differences in situation or circumstances between the things dealt with in one class and those dealt with in another. The controlling rule is stated in State ex rel. Cone v. Bauman, 120 Neb. 77, 231 N. W. 693, as follows: "The rule is well established that the legislature may, for the purpose of legislating, classify persons, places, objects or subjects, but such classification must rest upon some difference in situation or circumstance which, in reason, calls for distinctive legislation for the class. The class must have a substantial quality or attribute which requires legislation appropriate or necessary for those in the class which would be inappropriate or unnecessary for those without the class." See, also, Lennox v. Housing Authority of the City of Omaha, 137 Neb. 582, 290 N. W. 451. The legisla-

tion has general application to cities of the metropolitan class and it has none of the aspects of special legislation.

The city contends also that the Parking Authority Law is unconstitutional because it amends Chapter 14, R. R. S. 1943, delegating the control of streets in metropolitan cities to such cities, but does not describe or repeal them. The section of the Constitution relied upon states in part: "And no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed." Art. III, § 14, Constitution. The plaintiff contends that the Parking Authority Law is complete in itself and is an independent act not subject to the cited constitutional prohibition. The rule is stated in Live Stock Nat. Bank v. Jackson, 137 Neb. 161, 288 N. W. 515, as follows: "The modern rule is: 'Where an act does not purport to be amendatory, but is enacted as original and independent legislation, and is complete in itself, it is not within the constitutional requirement as to amendments, though it may, by implication, modify or repeal prior acts or parts thereof.' 1 Lewis' Sutherland, Statutory Construction (2d ed.) 446, sec. 239." See, also, Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85; State ex rel. City of Columbus v. Price, 127 Neb. 132, 254 N. W. 889.

The Parking Authority Law deals with a new subject, complete in itself. It is original and independent legislation, and is not within the contemplation of the con-stitutional requirement as to amendments. There is no merit to the contention that the quoted portion of Article III, section 14, of the Constitution, was violated.

The city further urges that the title to the act is defective in that it makes no reference to the fact that the city is required to grant to the authority the right to use the space below the surface of the streets abutting on the courthouse site and that the county is required to grant to the authority the right to use any space below the plot of ground used as a courthouse site and such portion of the surface of such plot not used

for a courthouse located thereon. The title to the act provides: "An Act establishing a Parking Authority; to provide for its formation, termination, and members including ex officio members; to provide for the appointment, tenure of office, duties, compensation, and qualifications of certain of its members; to provide for powers and duties of the authority; to define terms; to permit it to borrow money as prescribed and limited; to provide for issuance of bonds and the procedure therefor; to prescribe a legislative finding and policy; to provide how this act shall be known or referred to; to declare that the provisions of this act shall be complete and in addition to other provisions of the law of the State of Nebraska as prescribed; to provide duties and powers of certain public officials, bodies, or corporations as prescribed; to provide a savings clause; and to declare an emergency." Laws 1955, c. 22, p. 101.

The portion of Article III, section 14, of the Constitution, here relied upon by the city provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title." The purpose of this provision limiting a legislative enactment to the object expressed in the title is to challenge the attention of those affected by the provisions of the act and to prevent surreptitious legislation. The rule in this state has been announced by this court to be: "The provisions of * * * the Constitution, should be liberally construed so as to uphold a provision in a legislative act which, though not specifically expressed in the title, is germane to the subject-matter, and comprehended within the objects and purposes, of the act." Pandolfo v. State, 120 Neb. 616, 234 N. W. 483. It is not necessary that the title analyze all the details of the bill. In State ex rel. City of Columbus v. Price, *supra,* we said: "If by a fair and reasonable construction the title calls attention to the subject-matter of the bill, it may be said that the object is expressed in the title." In an earlier case this court stated: "It is not essential that the title chosen by the

legislature be the most appropriate; if it indicates the scope and purpose of the act, it is sufficient. * * * Neither is it necessary that the title inform its readers of the specific contents of the bill. If it indicates the subject of the proposed legislation, it meets all essential requirements. It needs not that it be a complete abstract and epitome of the contents of the bill." Nebraska Loan & Building Assn. v. Perkins, 61 Neb. 254, 85 N. W. 67. See, also, Spier v. Thomas, 131 Neb. 579, 269 N. W. 61. In the case of State ex rel. Graham v. Tibbets, 52 Neb. 228, 71 N. W. 990, 66 Am. S. R. 492, we stated the rule to be: "The purpose of the constitutional provision under consideration, * * * is to give notice, through the title of the bill, to the members of the legislature and the public, of the subject-matter of the projected law,— in other words, that the title should clearly indicate the legislation embraced in the bill. * * * The title to a bill may be general, and it is not essential that it specify every clause in the proposed statute. It is sufficient if they are all referable and cognate to the subject expressed. When the subject is expressed in general terms, everything which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is embraced in and authorized by it. If the subject-matter is within the scope of the title, the constitutional requirement is met." This rule was approved by this court in County of Dawson v. South Side Irr. Co., 146 Neb. 512, 20 N. W. 2d 387. See, also, Lennox v. Housing Authority of the City of Omaha, *supra;* Nebraska Mid-State Reclamation Dist. v. Hall County, 152 Neb. 410, 41 N. W. 2d 397.

The title here involved gave notice that the object and purpose of the act was to provide for the establishment of a parking authority and the procedure provided for its organization. It indicated that terms were to be defined in the act and that the duties of its officers were therein set out. It set forth the general

nature of the powers granted. All parts of the title indicate the general nature of the legislation. Everything in the act is necessary to make a complete enactment in regard to the general nature of the act as expressed in the title. The use of streets for parking purposes and the development of off-street parking is the primary function of a parking authority. The subject matter of the act is within the general scope of the title. This is all that the Constitution requires. The title to the act meets constitutional requirements.

The next contention raised by the city of Omaha is that the Parking Authority Law, even if valid, has no application to the city of Omaha for the reason that it operates under a home rule charter and that the use to which streets, including subway areas, is to be put is a matter of local concern. Under the Constitution a home rule charter must be consistent with and subject to the Constitution and laws of this state. This has been construed to mean that a provision of a home rule charter takes precedence over a conflicting state statute in instances of local municipal concern, but when the Legislature enacts a law affecting municipal affairs which is of state-wide concern, the state law takes precedence over any municipal action taken under the home rule charter. State ex rel. Martin v. Cunningham, 158 Neb. 708, 64 N. W. 2d 465; Axberg v. City of Lincoln, 141 Neb. 55, 2 N. W. 2d 613, 141 A. L. R. 894. The constitutional limitation that a home rule charter must be consistent with and subject to the laws of the state means that on matters of state-wide concern to the people of the state involving a public need or policy, the charter must yield to state law. State ex rel. Fischer v. City of Lincoln, 137 Neb. 97, 288 N. W. 499. It has been held that the construction of a viaduct over a railroad right-of-way within a city is a matter of public concern, and not a local one. Hinman v. Temple, 133 Neb. 268, 274 N. W. 605, 111 A. L. R. 1217. The improvement of streets, alleys, and highways within corporate limits

is ordinarily a strictly municipal matter. Salsbury v. City of Lincoln, 117 Neb. 465, 220 N. W. 827. The levying of assessments for water mains within a city is likewise a matter of local concern. Pester v. City of Lincoln, 127 Neb. 440, 255 N. W. 923. The city of Omaha contends that subway and off-street parking fall in the category of matters of purely local concern.

The state has inherent power to establish, maintain, and control the highways of the state, including those within corporate limits of municipalities. While the Legislature may properly delegate certain powers over streets, alleys, and highways to a municipality, it retains the power to legislate with reference thereto, even in home-rule cities, where a matter of state-wide policy and concern are involved.

City streets are necessarily a part of the highway system of the state. The concentration of traffic in metropolitan cities through which traffic in and out of the city must move is a matter of general rather than strictly local concern. The state is concerned when traffic in a large city becomes congested and interferes with traffic, particularly that which is designated as through traffic. It is of state-wide concern that traffic lanes through congested areas be kept open and that such areas be not permitted to operate as a bottleneck in the free movement of traffic. In order to deal with highway traffic problems of state-wide concern, the state can by legislative action provide the means of alleviating such conditions in the public interest. The choosing of the means and methods of accomplishing such purpose is a legislative function limited only by constitutional prohibitions. Its justification stems directly from the exercise of the police power, the inherent power of government. The major and primary object of the legislation is to facilitate and make safe the use of the highways. It transcends any purely local concern and is one of state-wide interest. The power of a municipality over its streets is statutory and not exclusive. Carlberg v. Met-

calfe, 120 Neb. 481, 234 N. W. 87. It is subject to the superior control of the state except where the Constitution prevents its doing so. There is no such constitutional prohibition where the subject matter is one of state-wide concern.

We think the Parking Authority Law is of general state concern and falls within the reasoning of Axberg v. City of Lincoln, *supra;* Lennox v. Housing Authority of the City of Omaha, *supra;* and Hinman v. Temple, *supra.* The state has not surrendered its inherent powers over highways and highway traffic problems which are of concern to the state generally. It is plain that Article XI of the Constitution contemplated a division between state affairs and municipal affairs of purely local concern. It does not define the laws that relate to each. The court must consider each case as it arises. We approved the following quotation from Helmer v. Superior Court, 48 Cal. App. 140, 191 P. 1001, in the case of Carlberg v. Metcalfe, *supra,* which we think has application here: "Until the advent of the automobile, interurban traffic was so small as to be negligible and, as a result, traffic regulations were a matter of concern only to the inhabitants of the city. But when autos and motortrucks invaded our highways and streets in tens and hundreds of thousands, a matter that yesterday was local has become of state and nation-wide importance to-day. * * * The term 'municipal affairs' is not a fixed quantity, but fluctuates with every change in the conditions upon which it is to operate."

We conclude that highways and highway control are preeminently a state affair. They concern and affect the whole state. Conditions in a metropolitan city with respect to them concern and affect the whole state even though the remedies for alleviating such congested areas may be altogether different than elsewhere. It is for the law-making body to determine if the authority over highways shall be exercised by county boards and city councils exclusively, or whether it shall act directly

in such matters. We hold that the Parking Authority Law deals with a matter of state-wide concern.

The city next contends that it is in a favored position in the present case because of the history of home rule in Omaha. On July 18, 1922, it adopted its home rule charter. Upon the adoption of its charter the legislative act of 1921 "lost its qualities as a statutory charter or law imposed by the sovereign power of the state, and in lieu thereof, by virtue of an explicit constitutional grant, its terms then existing became a home rule charter created and to be thereafter continued in force at the will of the grantee municipality lawfully expressed, every section of which was expressly made subject to its own lawful amendments." Munch v. Tusa, 140 Neb. 457, 300 N. W. 385. In Sullivan v. City of Omaha, 146 Neb. 297, 19 N. W. 2d 510, on rehearing, 146 Neb. 305, 21 N. W. 2d 510, we construed this to mean that an amendment to the home rule charter adopted on July 18, 1922, will be considered valid even though it involves a matter of state-wide concern until such time as the Legislature shall occupy the field after the adoption of the home rule charter. The Parking Authority Law was enacted subsequent to the adoption of the Omaha home rule charter, consequently the fact that Omaha once had a statutory home rule charter is of no importance in resolving the present litigation.

The county of Douglas asserts in its brief that the state may not take its property or direct its use to the benefit of another public corporation without its consent. It urges that such power does not exist unless it will be to the benefit of the whole taxing district, and that mere incidental benefits do not fulfill the requirements of the law. We are of the opinion that subway parking and off-street parking constitute a public use, and in providing them, a public function is being accomplished. Cleveland v. City of Detroit, 324 Mich. 527, 37 N. W. 2d 625, 11 A. L. R. 2d 171; Lowell v. City of Boston, 322 Mass. 709, 79 N. E. 2d 713; Foltz v. City of

Indianapolis, —— Ind. ——, 130 N. E. 2d 650; City and County of San Francisco v. Linares, 16 Cal. 2d 441, 106 P. 2d 369; Poole v. City of Kankakee, 406 Ill. 521, 94 N. E. 2d 416.

The state clearly has the right to direct the use, management, and disposition of county property so long as it is done for the benefit of the public in the taxing district. State ex rel. City of Omaha v. Board of County Commissioners, 109 Neb. 35, 189 N. W. 639. In the foregoing case the court said: "It must be remembered that a county does not possess the double governmental and private character that cities do. It is governmental only, and in that capacity acts purely as an agent of the state. The funds raised by taxation in the county are subject to the direction and control of the legislature for public use in that county, and the property of the county, acquired by funds raised through taxation, is property of which the state can direct the management and disposition, so long at least as it acts for the benefit of the public in the taxing district." See, also, City of Fremont v. Dodge County, 130 Neb. 856, 266 N. W. 771. The property of a city used in carrying out its governmental functions as distinguished from its proprietary activities is subject to the same rule as other governmental subdivisions. Seward County Rural Fire Protection Dist. v. County of Seward, 156 Neb. 516, 56 N. W. 2d 700; Nickel v. School Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566; State ex rel. School Dist. v. Ellis, 160 Neb. 400, 70 N. W. 2d 320.

The contention that the property to be transferred to the Omaha Parking Authority is not for the benefit of the whole taxing district is without merit. It is a matter of county concern as well as state concern.

The county of Douglas next contends that the Parking Authority Law is unconstitutional in that it provides for the acquisition of public property for a private use. The act contains the following provisions which give rise to the claim that the property is for a private

use: "The authority shall lease or grant concessions for the use of the facilities or various portions thereof to one or more operators to provide for the efficient operation of the facilities. All leases or concessions shall be let on a competitive basis and no lease or concession shall run for a period in excess of thirty years. In granting any lease or concession, the authority shall retain such control of the facilities as may be necessary to insure that the facilities will be properly operated in the public interest and that the prices charged are reasonable." § 14-1711, R. S. Supp., 1955.

The determination of the foregoing question is dependent upon the over-all purposes to be accomplished in the leasing of public property to a private person. If the purposes to be accomplished in leasing parking facilities to a private person remain a public use, the leasing is a proper one. The fact that a lessee might gain some private benefit from the operation of a parking facility does not necessarily alter the public character of its use. Such benefits are merely incidental to the public purpose and do not constitute exclusive benefits for a private few. Poole v. City of Kankakee, *supra*. If the purpose of the leasing of the facilities was to accomplish a private purpose, it would, of course, contravene constitutional prohibitions. We think the statute properly guards against a leasing of the property of the authority for a private purpose. It provides that in leasing any of the property the authority shall retain such control of the facilities as may be necessary to insure that such facilities will be properly operated in the public interest and that the prices charged are reasonable. These provisions enjoin upon the authority a duty to maintain the public character of the enterprise and to see to it that it is operated in the public interest and at reasonable prices. A lease that does not protect the public use to the extent noted is not in compliance with the statute. The statute affords ample protection against converting the facilities to a private

use and any attempt to so do would subject the authority and its lessee to legal remedy.

In Foltz v. City of Indianapolis, *supra*, this same question was raised and disposed of in the following language: "It seems to us that the language of the statute is sufficiently broad that the character of the control which the City and Commission may impress on the property when leased or sold, will assure its public use and dedication for the purposes intended, without the control, by the Commission, over the rates to be charged for the off-street parking. It is necessary that the statute grant the power for placing such restrictions on the use of the property, in order for the statute to be constitutional; otherwise the property might be devoted to private use after its lease or sale by the Commission. The Commission has no discretion in failing or refusing to exercise such powers and taking such protective measures by terms and conditions in the lease as will assure the dedication of the property to the public use intended." In the foregoing case the fixing of price controls was not deemed controlling because of the stated power of the state to regulate businesses affected with the public interest. An express provision to control prices was held to be unnecessary. It will be noted that the opinion adheres to the principle of rate control, although it relies upon the common-law right to do so rather than any stated authorization in the Off-Street Parking Act of the State of Indiana.

In Poole v. City of Kankakee, *supra*, the contention was made that the authority to lease the parking facilities imputes a private purpose to the act. In disposing of this question the court said: "As regards the nature of the act, appellees' last assertion is that the public purpose is destroyed by the provisions which permit a municipality, once owning land, to use it for any type of private business it may choose. Appellees do not point out the language which is susceptible of such interpretation nor do we find that it exists. * * * Specula-

tion that a city might attempt to devote the land acquired to a private purpose could not render the act invalid but would be ground for future judicial relief should the need arise." In this respect, we find that the limitations on leasing of its facilities placed upon the parking authority by the act before us are adequate protection against the facilities being converted to a private use. The fact that the authority may not perform its duty in this respect does not make the act unconstitutional, although it may give rise to legal proceedings to compel the proper carrying out of the purposes of the act. Measured by the principles announced in the foregoing decisions, we fail to see how the Parking Authority Law in any manner authorizes the use of public property for a private purpose. See, City and County of San Francisco v. Ross, 44 Cal. 2d 52, 279 P. 2d 529, where it was held that the failure to provide for the control of parking rates divested parking facilities of their public character.

The Parking Authority Law was enacted for a public purpose. The title of the act contains but one subject. It is an independent act complete in itself, and is not amendatory. It involves a matter of state-wide concern and is controlling over the home rule charter of the city of Omaha. The object sought to be reached by the statute could not be realized by the action of private individuals for the statute indicates that the purpose could not be accomplished except by the use of streets and county courthouse areas. Adequate controls are provided in leasing such facilities to private persons for their operation to insure that they will retain their public character. The act does not authorize the use of public property for a private purpose. For these reasons, among others stated in the opinion, we hold the Parking Authority Law to be constitutional. This being true, the judgment of the district court must be reversed and the cause remanded with directions to grant the prayer of the petition.

REVERSED AND REMANDED WITH DIRECTIONS.