RUTH THOMPSON, ADMINISTRATRIX OF THE ESTATE OF HOWARD S. THOMPSON, DECEASED, APPELLEE, v. COMMERCIAL CREDIT EQUIPMENT CORPORATION ET AL., APPELLANTS.

99 N. W. 2d 761

Filed December 4, 1959. No. 34644.

*Wright, Simmons & Harris* and *Atkins & Ferguson,* for appellants.

*Robert L. Gilbert,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Scotts Bluff County. It involves an action brought in that court by Howard S. Thompson against Commercial Credit Equipment Corporation and Brubaker-Sommers Company to have declared void a certain obligation executed by plaintiff to defendant Brubaker-Sommers Company in the form of a "Purchase Agreement" and assigned by it to defendant Commercial Credit Equipment Corporation. The basis for the action is the claim that the obligation owing under the "Purchase Agreement," which is payable in installments, was in fact a loan and, as such, within the provisions of the Nebraska Installment Loan Act, and because the amount charged as interest for the use thereof is in violation of the inhibitory provisions of the act, the obligation is void.

The trial court so found and held accordingly, finding it was a loan and that the interest charged therefor was in excess of that authorized by section 45-138, R. S. Supp., 1957, and, because thereof, held it was void and unenforcible. It also held that section 45-155, R. S. Supp., 1957, the provisions of which the defendants sought to have applied if the trial court should find the indebtedness to be an installment loan, was unconstitutional. The trial court also enjoined the defendants from repossessing the equipment described in the "Purchase Agreement," dismissed Commercial Credit Equipment Corporation's cross-petition whereby it sought to do so, and enjoined the defendants from in any manner attempting to enforce or collect the indebtedness. Defendants filed separate motions for new trial and have perfected this appeal from the overruling thereof.

After judgment had been rendered by the trial court the death of the plaintiff Howard S. Thompson was called to that court's attention. The action was there-

upon revived in the name of Ruth Thompson as the administratrix of decedent's estate.

Appellants contend the trial court erred in finding that the "Purchase Agreement" was in fact a loan; in holding that the purchase agreement was void and unenforcible by reason of certain provisions in section 45-138, R. S. Supp., 1957; in holding section 45-155, R. S. Supp., 1957, to be unconstitutional; and in enjoining the appellants from enforcing the collection of the purchase agreement.

Appellant Brubaker-Sommers Company is a partnership consisting of B. C. Brubaker and Edward D. Sommers. It engages in the sale of farm machinery with its place of business located in Scottsbluff, Nebraska. Commercial Credit Equipment Corporation engages in financing Ford products, including those purchased by the appellant Brubaker-Sommers Company from that manufacturer. Howard S. Thompson was a farmer living in the vicinity of Morrill, Nebraska, when the transaction herein involved was entered into. We shall hereinafter refer to Edward D. Sommers as Sommers; to Howard S. Thompson, deceased, as Thompson; to Brubaker-Sommers Company as the partnership; and to Commercial Credit Equipment Corporation as Commercial. It appears Commercial was the successor of Dearborn Motors Credit Corporation.

The obligation evidenced by the "Purchase Agreement" executed by Thompson arose out of a deal whereby Thompson purchased from Brubaker-Sommers Company a new Ford tractor and Ford cornpicker, negotiations for the purchase of which were carried on by Thompson entirely with Sommers. Both of these men testified at the trial and there is conflict in their testimony as it relates to material matters concerning the agreement itself. In this situation the following principle has application: "Suits in equity, on appeal to this court, are triable de novo, subject to the rule that when evidence on material questions of fact is in ir-

reconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than another." Wilkie v. Banse, 166 Neb. 138, 88 N. W. 2d 181. We might add that there are circumstances disclosed by the evidence, as they relate to parts of Sommers' testimony, that seriously affect its weight.

In view of the foregoing we find the evidence adduced establishes the following: That in September of 1957 Thompson was wanting to buy a new tractor and cornpicker, shopping around for that purpose; that, among others, he contacted the partnership through Sommers; that he told Sommers of his desire, advising him that he had a used tractor, cornpicker, cultivator, and plow that he wished to trade in on any deal he made; that thereafter, in the latter part of September, Sommers came out to Thompson's farm to see those items; that on October 1, 1957, Sommers advised Thompson that he would make the following deal, that is, that the partnership would sell him a new Ford tractor and cornpicker for $5,093 and take in trade his used tractor, cornpicker, cultivator, and plow for $1,593, thus leaving a balance owing on the purchase price of $3,500; that Thompson accepted this offer, having advised Sommers that he would have to finance the balance; that Sommers then advised Thompson that the balance could be financed through Dearborn in Kansas City but that there would be some difference added in the form of finance charges; that on October 1, 1957, Sommers prepared an "Invoice" setting forth the terms of this agreement, showing "Terms: DMCC," meaning Dearborn Motors Credit Corporation, a copy of which Sommers handed to Thompson; that some 3 or 4 days after October 1, 1957, Sommers came out to the Thompson farm and got the trade-ins; that some 6 or 7 days thereafter Thompson first saw and then signed the "Purchase Agreement," dated October 1, 1957, showing a balance owing

of $4,275 payable at the rate of $1,425 on April 1, 1958, April 1, 1959, and April 1, 1960, respectively, receiving a copy thereof; and that some time thereafter, toward the end of October, the new Ford tractor and corn-picker were delivered to Thompson.

It will be observed that finance charges in the sum of $775 were added to the balance of $3,500 owing on the cash sale. This is far in excess of what is authorized by section 45-138, R. S. Supp., 1957, which, in this respect, provides: "No licensee shall directly or indirectly charge, contract for, or receive a greater rate of interest than nine per cent per annum upon any loan, or upon any part or all of any aggregate indebtedness of the same person, in excess of three thousand dollars."

The "Purchase Agreement" was assigned to Commercial and, on October 31, 1957, the partnership received from Commercial the sum of $3,393 with the understanding that when the obligation had been paid in full it would receive an additional sum of $105 and credit in a reserve fund of $97.05. It is apparent that the partnership was an agent of Commercial in making the loan to finance the balance of the purchase price.

"An automobile dealer may in good faith sell a car on time for a price in excess of the cash price without tainting the transaction with usury, though the difference in prices may exceed lawful interest for a loan. * * * In order to have the foregoing principle apply it must appear that the buyer actually was informed of and had the opportunity to choose betwen a time sale price and a cash sale price." State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55.

Sommers never informed Thompson of any time sale price either before or at the time the deal was closed on October 1, 1957. He did inform Thompson, however, that finance charges would be added if he wanted to finance the balance of the cash price over a period of time. Sommers obtained the amount of those charges

from a "Retail Time Payment Chart" furnished by either Commercial or Dearborn Motors Credit Corporation. We think the following from State ex rel. Beck v. Associates Discount Corp., *supra,* has application to the foregoing situation: "It is not a time sale if a car dealer (here implement dealer), in selling a car (here farm machinery), actually agrees with the buyer that he will finance * * * the balance of the cash purchase price agreed upon and does so, either directly or through others, even though he obtains the schedule of payments and the total amount thereof from a rate chart furnished by a finance company * * *. Such a transaction would be a loan to finance the balance of the cash purchase price and if payable in installments must meet the requirements of the statutes relating thereto."

We hold that the transaction between Thompson and the partnership was a cash sale; that Commercial, through the partnership, financed the balance owing on an installment basis; and that the finance charges made for doing so were in excess of those authorized by section 45-138, R. S. Supp., 1957. The question then arises, what is the effect thereof?

The foregoing statute provides, in respect thereto, that: "Any contract of loan made in violation of this section, either knowingly or without the exercise of due care to prevent the same, shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges on such loan."

Here both appellants are nonlicensees. We have frequently held, and we think correctly, that every inhibitory provision contained in the Installment Loan Act (sections 45-114 to 45-158, R. R. S. 1943, as amended) apply alike to licensees and nonlicensees. See, Powell v. Edwards, 162 Neb. 11, 75 N. W. 2d 122; State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215; McNish v. General Credit Corp., 164 Neb. 526, 83 N. W. 2d 1; Curtis v. Securities Acceptance Corp., 166 Neb. 815, 91 N. W. 2d 19.

Having come to the conclusion that the inhibitory provision of section 45-138, R. S. Supp., 1957, as it relates to the rate of interest that may be charged on a loan in excess of three thousand dollars has been violated, the question arises, what civil penalties are provided by the act, or any amendments thereto, that are applicable in such cases to nonlicensees. Formerly the violation thereof by any such person in connection with any indebtedness, however acquired by such person, rendered the indebtedness void and uncollectible. See, § 45-138, R. S. Supp., 1955, and §§ 45-154 and 45-155, R. R. S. 1943; Powell v. Edwards, *supra;* State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215; McNish v. General Credit Corp., *supra;* McNish v. Grand Island Finance Co., 164 Neb. 543, 83 N. W. 2d 13; Curtis v. Securities Acceptance Corp., *supra.*

However, it is apparent the 1957 Legislature, by enacting L. B. 33, sought to change the civil penalties for violations of the Installment Loan Act. See Laws 1957, c. 194, p. 688. This act, which is now section 45-155, R. S. Supp., 1957, provides as follows: "Violation of sections 45-114 to 45-155 and amendments thereto, by any lender licensed thereunder in connection with any loan indebtedness however acquired, or by any lender of money for whom a license is by this act required, shall, in addition to the penalties as to interest provided by law, render the first one thousand dollars of such principal indebtedness void and uncollectible. If any other lender of money charges interest at a rate of interest higher than the lender is permitted by law to charge or in any event any initial indebtedness to the seller arising entirely from the bona fide sale of property is held to be a loan or forbearance, the penalty shall not be that provided in sections 45-114 to 45-155." It is appellants' thought that the provisions thereof are controlling here.

Legislation, like that here under consideration, is

within the public policy making power of the state and the fixing of that public policy, within constitutional limits, is for the Legislature and not the courts. See, State ex rel. Beck v. Associates Discount Corp., 168. Neb. 298, 96 N. W. 2d 55; McNish v. General Credit Corp., *supra;* Althaus v. State, 99 Neb. 465, 156 N. W. 1038.

It will be observed that the civil penalties contained in section 45-138, R. S. Supp., 1955, were left intact by the 1957 Legislature when it amended that section by enacting L. B. 404. See Laws 1957, c. 193, § 2, p. 685. Nor does L. B. 33, passed by the 1957 Legislature, either directly repeal or amend section 45-138, R. S. Supp., 1957. See Laws 1957, c. 194, p. 688. But appellants contend it does so by implication.

L. B. 404 was approved on May 9, 1957, to become effective on September 20, 1957, whereas L. B. 33 was approved May 14, 1957, but, because it contained an emergency clause, became effective immediately. We said in Midwest Popcorn Co. v. Johnson, 152 Neb. 867, 43 N. W. 2d 174: "The Legislature during a session may do and undo, consider and reconsider, as often as it thinks proper, as only the final result will be regarded as the thing done."

Article III, section 14, Constitution of Nebraska, provides, in part, that: "And no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed." In Tukey v. Douglas County, 129 Neb. 353, 261 N. W. 833, we said: "This court has frequently held that a legislative act which is amendatory of existing laws is unconstitutional where such act does not contain the section or sections amended and does not repeal said original sections." And, as stated in 50 Am. Jur., Statutes, § 538, p. 542: "Repeals by implication are not favored, and there are many instances in which particular statutes are held not to be repealed by implication."

However, that a law may be repealed by implication is well settled by the opinions of this court. See Union P. R. R. Co. v. Sprague, 69 Neb. 48, 95 N. W. 46. As stated in Union P. R. R. Co. v. Sprague, *supra*: "An intention to repeal all laws inconsistent with a proposed measure of legislation is necessarily implied and need not be expressed in the title of the legislative bill." But, to do so, the act must be complete in itself. See, Tukey v. Douglas County, *supra;* State ex rel. Kaspar v. Lehmkuhl, 127 Neb. 812, 257 N. W. 229; Endres v. McDonald, 115 Neb. 827, 215 N. W. 114; State ex rel. Hall County Farm Bureau v. Miller, 104 Neb. 838, 178 N. W. 846; State ex rel. Graham v. Tibbets, 52 Neb. 228, 71 N. W. 990, 66 Am. S. R. 492. As stated in State ex rel. Graham v. Tibbets, *supra*: "An act not complete in itself, but which is clearly amendatory in its nature and scope, must set forth the section or sections as amended, and repeal the original section or sections." And in State ex rel. Hall County Farm Bureau v. Miller, *supra,* we held: "An independent legislative act covering the entire subject of legislation to which it relates may incidentally modify or change existing statutes without referring to them." And in State ex rel. Taylor v. Hall, 129 Neb. 669, 262 N. W. 835, we said: "That such an act is invalid needs no citation of authority; in fact, we think its invalidity is conceded subject to the one exception, that an act complete in itself is not invalid because it may incidentally modify, change or destroy the effect of existing statutes."

Section 45-155, R. S. Supp., 1957, is not a complete act by itself because reference to other sections of the Installment Loan Act are necessary in order to interpret and apply it and, without which, it would be meaningless and without effect.

We think the following language, quoted in State ex rel. Taylor v. Hall, *supra,* from State ex rel. Beal v. Bauman, 126 Neb. 566, 254 N. W. 256, is applicable here: " 'In truth, the new enactment accomplished nothing

of independent nature and its effect is wholly confined to "changes" of what theretofore existed, with the evident intent of its authors that by the mingling of the new changes with the old provisions a connected piece of legislation covering the same and original subject would result. But this is strictly a process of amendment.'" And as stated in Tukey v. Douglas County, *supra*: "Even though the act professes to be independent and complete in itself, yet if it is clearly not such, but is one amendatory in character, the court must so hold." That, we think, is the situation here. We hold that section 45-155, R. S. Supp., 1957, does not, in any way, amend section 45-138, R. S. Supp., 1957, by implication and that the latter section's provisions as to civil penalties applicable to any contract of loan made in violation thereof are still in full force and effect.

There is a further reason why the quoted provisions of section 45-138, R. S. Supp., 1957, dealing with civil penalties, are still in force and effect. This section deals specifically with installment loans in excess of three thousand dollars, whereas section 45-155, R. S. Supp., 1957, is general in its application. In Lee v. Lincoln Cleaning & Dye Works, 144 Neb. 659, 14 N. W. 2d 227, we said: "The general rule in such cases is: 'It is a fundamental rule that where the general statute, if standing alone, would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute, whether it was passed before or after such general enactment. Where the special statute is later, it will be regarded as an exception to, or qualification of, the prior general one; and where the general act is later, the special statute will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication.'" See, also, Nitzel & Co. v. Nelson, 144 Neb. 662, 14 N. W. 2d 197; 50 Am. Jur., Statutes, § 561, p. 562.

Article III, section 14, Constitution of Nebraska, pro-

vides, in part, that: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title."

The title to L. B. 33 is as follows: "AN ACT to amend section 45-155, Reissue Revised Statutes of Nebraska, 1943, relating to installment loans; *to change the provisions for violations, as prescribed, by a lender licensed under the provisions of sections 45-114 to 45-155,* Reissue Revised Statutes of Nebraska, 1943, and amendments thereof; to repeal the original section, and also section 45-154, Reissue Revised Statutes of Nebraska, 1943; and to declare an emergency." (Emphasis ours.)

Appellants contend this title was sufficient to authorize any amendments germane to section 45-155, R. R. S. 1943, which had to do with civil penalties for violation of the Installment Loan Act, and sufficient to permit the repeal of section 45-154, R. R. S. 1943, thereof.

"Any provision in a legislative bill which is not clearly expressed in the title can not be enacted into law." Union P. R. R. Co. v. Sprague, *supra.* " 'The purpose of the constitutional provision under consideration, * * * is to give notice, through the title of the bill, to the members of the legislature and the public, of the subject-matter of the projected law,—in other words, that the title should clearly indicate the legislation embraced in the bill.' " County of Dawson v. South Side Irr. Co., 146 Neb. 512, 20 N. W. 2d 387. See, also, Midwest Popcorn Co. v. Johnson, *supra.*

"Where the title to an act is one for the amendment of an existing statute or section thereof, any legislation may be included in the amendatory act which is germane to the subject of the statute or section thereof sought to be amended." In re Estate of Austin, 116 Neb. 137, 216 N. W. 171.

However, as said in In re Estate of Austin, *supra:* "We think it may be conceded that under the restricted title of the act of 1905 no power could have been conferred upon the district court to grant licenses to execu-

tors, administrators or guardians to mortgage the real estate of their trust estates, because that act, by its title, purported to give authority only to county courts to grant such license."

The latter is the situation here for the Legislature limited itself by the title to licensed lenders under the Installment Loan Act and therefore could not enact a law thereunder relating to nonlicensees.

As stated in State ex rel. Graham v. Tibbets, *supra,* by referring to Board of Commissioners v. Aspen Mining & Smelting Co., 3 Colo. App. 223, 32 P. 717, as follows: "The opinion, after citing the cases in support of the doctrine, continues with the following quotation from Cooley, Constitutional Limitations (5th ed.), 179: 'As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might, with entire propriety, have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been unnecessarily restrictive. The courts cannot enlarge the scope of the title. They are vested with no dispensing power. The constitution has made the title a conclusive index to the legislative intent as to what shall have operation. It is no answer to say that the title might have been made more comprehensive, if in fact the legislature have not seen fit to make it so.' " Therein we held: "An act is unconstittuional and void if the 'title is not broad enough to include the subject-matter of legislation.' " We think the latter is true here.

Article III, section 18, Constitution of Nebraka, provides, in part, that: "The Legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever."

Appellee contends section 45-155, R. S. Supp., 1957,

violates the foregoing provisions of Article III, section 18, Constitution of Nebraska, insofar as it creates four classes to which the civil penalties apply, to-wit: Licensed lenders, any lender of money for whom a license is by the act required, other lenders of money (apparently nonlicensees), and any holder of the initial indebtedness arising entirely from a bona fide sale of property should, it be held, that such indebtedness is a loan or forebearance. There would seem to be no reasonable basis for the making of such classifications and the granting of such special privileges and immunities, particularly in view of the purpose for which the Installment Loan Act was enacted. As stated in State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 122: "Their purpose and design is to license and control the business of making such installment loans, and to restrict the enforcement and collection of illegal installment loans once they have been made by either licensees or nonlicensees, an all-inclusive and proper classification. Thus, the inhibitory provisions thereof include and apply to all lenders of installment loans, whether they be licensees or nonlicensees. We therefore conclude that sections 45-114 to 45-158, R. R. S. 1943, are not local or special laws 'Regulating the interest on money' in violation of Article III, section 18, Constitution of Nebraska."

There are other questions raised which we do not find it necessary to discuss, in view of what we have herein held. We find the trial court was correct in holding the original was a cash sale, the balance of which was financed by an installment loan; that section 45-155, R. S. Supp., 1957, as passed by the 1957 Legislature, is unconstitutional; and that the installment loan, made to finance the balance of the cash purchase price, violated the inhibitory provisions of the Installment Loan Act and therefore is void and uncollectible. In view thereof, we affirm the judgment of the trial court en-

joining the appellants from in any manner collecting or attempting to collect said indebtedness.

AFFIRMED.